PEOPLE v LAMBERT

Docket No. 55264. Argued November 5, 1974 (Calendar No. 12).—
   Decided November 25, 1975.

   Donaldson L. Lambert, Jr., was convicted in a jury trial in the 1st
   District Court, Charles J. Golden, J., of driving an automobile
   while under the influence of intoxicating liquor. The Monroe
   Circuit Court, William J. Weipert, J., affirmed. The Court of
   Appeals, Bronson, P. J., and J. W. Fitzgerald and O'Hara, JJ.,
   affirmed (Docket No. 14084). Defendant appeals. *Held:*

   1. The advice to a person charged with driving a vehicle
   while under the influence of intoxicating liquor who takes a
   chemical test administered at the request of a police officer that
   he will be given a reasonable opportunity to have a person of
   his own choosing administer another chemical test may be
   given either before or after the administration of the chemical
   test requested by police. The right is that to have an additional
   chemical test administered by a person of the defendant's
   choosing within a reasonable time after arrest; the exact timing
   of the advice of the right is not crucial so long as the defendant
   is offered a reasonable amount of time to obtain the test.

   2. The comments of the trial judge so overshadowed the
   remainder of the instructions as to deny the defendant his
   right to a fair trial where the judge stated that he could not
   tell the jury the difference between the major charge and the
   included offense of impaired driving because he just did not

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 259, 260, 332–
   334.
   Admissibility and weight of evidence based on scientific test for
   intoxication or presence of alcohol in system. 159 ALR 209.
   Qualification as expert to testify as to findings or results of scientific
   test to determine alcoholic content of blood. 77 ALR2d 971.
[3, 4] 75 Am Jur 2d, Trial §§ 573–930.
[5, 6] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 253–262.
   What constitutes driving, being in control of, or operating a motor
   vehicle within statute making such act, while intoxicated, an
   offense. 47 ALR2d 570.
   What is a "motor vehicle" within statutes making it an offense to
   drive while intoxicated. 66 ALR 2d 1146.

know, thus allowing the jury to supply legal meaning to both statutes.

3. The following jury instruction is appropriate to explain the difference between driving while under the influence of intoxicating liquor and impaired driving: The distinction between the crime of driving under the influence of intoxicating liquor and the lesser included offense of driving while ability is visibly impaired is the degree of intoxication which the people must prove. To prove driving under the influence of intoxicating liquor, the people must prove that defendant's ability to drive was substantially and materially affected by consumption of intoxicating liquor. To prove driving while ability is visibly impaired, the ˙people must prove that defendant's ability to drive was so weakened or reduced by consumption of intoxicating liquor that defendant drove with less ability than would an ordinary, careful and prudent driver. Such weakening or reduction of ability to drive must be visible to an ordinary, observant person.

Reversed and remanded for retrial.

1. AUTOMOBILES—INTOXICATING LIQUORS—CHEMICAL TESTS.

The intent of the Legislature in providing for chemical tests of the blood alcohol content of a person charged with driving a vehicle while under the influence of intoxicating liquor was to provide a scientifically proven method of preserving relevant evidence of a defendant's physical condition at or near the time of his arrest for driving under the influence of intoxicants; a restrictive reading of the statute to require that one who takes a chemical test administered at the request of a police officer must thereafter be informed of his right to have an additional chemical test administered and not before his submission to the requested test is improper and not warranted in order to carry out that intent (MCLA 257.625a).

2. AUTOMOBILES—INTOXICATING LIQUORS—CHEMICAL TESTS—PREJUDICE.

A defendant charged with driving a vehicle while under the influence of liquor who takes a chemical test administered at the request of a police officer must be advised of the right to have an additional chemical test administered by a person of the defendant's choosing, within a reasonable time after arrest; a defendant is not prejudiced by a prompt appraisal of this right, but only by excessive delay, during which the blood chemistry of the defendant is materially altered by bodily functions (MCLA 257.625a).

3. Trial—Instructions to Jury.
    It is the function of a court to inform the jury of the law by which its verdict must be controlled; the purpose of instructions is to enable the jury to understand and apply the law to the facts of the case.

4. Criminal—Instructions to Jury.
    An accused has a right to have a jury pass upon the evidence under proper instructions.

5. Automobiles—Intoxicating Liquors—Instructions to Jury—Fair Trial—Included Offense.
    Comments of a trial judge so overshadowed the remainder of the instructions to the jury as to deny a defendant his right to a fair trial where the judge stated that he could not tell the jury what the difference was between the major charge of driving an automobile while under the influence of intoxicating liquor and the included offense of impaired driving because he just did not know, thus allowing the jury to supply legal meaning to both statutes (MCLA 257.625, 257.625b).

6. Automobiles—Driving Under the Influence of Liquor—Driving While Ability Visibly Impaired—Distinction.
    The distinction between the crime of driving while under the influence of intoxicating liquor and the lesser offense of driving while the ability to operate a vehicle is visibly impaired is in the degree of intoxication which must be proven: for driving under the influence the ability to drive must be substantially and materially affected by drinking, while for impaired driving the ability to drive must be visibly weakened or reduced by drinking so that it is not the same as that of an ordinary careful and prudent driver (MCL 257.625, 257.625[b]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James J. Rostash,* Prosecuting Attorney, and *Prosecuting Attorneys Appellate Service* (by *Edward R. Wilson,* Director, and *Howard C. Marderosian),* for the people.

*Griffin & Griffin* (by *Thomas E. Griffin, Jr.),* for defendant.

M. S. Coleman, J. On March 19, 1971, defendant, Donaldson L. Lambert, Jr. was arrested in Dundee, Michigan for the offense of driving an

automobile while under the influence of intoxicating liquor.[1] After a jury trial in the District Court of Monroe County, defendant was convicted of that offense and sentenced to pay a fine of $100, court costs and to spend 15 days in the county jail. The conviction was affirmed by the Monroe Circuit Court on March 29, 1972 and by the Court of Appeals on July 27, 1973 in an unpublished per curiam opinion, Docket No. 14084. This Court granted defendant's delayed application for leave to appeal on February 21, 1974.[2]

## I.

The defendant has raised five issues in this appeal. His first four issues are all closely related and concern a single point of statutory interpretation. The pertinent portion of the statute involved, MCLA 257.625a(3); MSA 9.2325(1)(3) reads:

"A person charged with driving a vehicle while under the influence of intoxicating liquor who takes a chemical test administered at the request of a police officer as provided in paragraphs (1) and (2) hereof, shall be informed that he will be given a reasonable opportunity to have a person of his own choosing administer one of the chemical tests as provided in this section within a reasonable time after his detention, and the results of such test shall be admissible and shall be considered with other competent evidence in determining the innocence or guilt of the defendant. Any person charged with driving a vehicle while under the influence of intoxicating liquor shall be informed that he has the right to demand that one of the tests provided for in paragraph (1) shall be given him and the results of such test shall be admissible and shall be considered with other competent evidence in determining the innocence or guilt of the defendant."

---

[1] MCLA 257.625; MSA 9.2325.

[2] *People v Lambert,* 391 Mich 777 (1974).

Simply stated, the defendant's main argument is that although the first sentence of the above section of the statute requires that an arrested person need be informed only once of his right to have an additional chemical test administered, that information must be given *after* and not before his submission to the requested test.[3] Defendant contends that the "after not before" reading of the statute is required to assure an adequate and effective appraisal of this statutory right. We do not agree.

A reasonable reading of the entire statutory scheme and its legislative history, we are convinced, leads to a different conclusion.

In *Collins v Secretary of State,* 384 Mich 656, 666; 187 NW2d 423 (1971), this Court was required to interpret a different section of the same statute. In doing so we stated:

"The statute does not explicitly state who initially has the right or power to choose which chemical test to administer and, indeed, it is ambiguous on this point. In such a situation, the legislative intent is to be gathered not from a particular provision but from the act as a whole, giving meaning to all sections of the act. *Sibley v Smith* (1853), 2 Mich 487; *Smith v City Commission of Grand Rapids* (1937) 281 Mich 235. And, when interpreting an act that is ambiguous, 'We seek a reasonable construction of statutes in the light of the purpose sought to be accomplished' *(Benjamin v Huntington Woods* [1957] 349 Mich 545, 555) 'and the intention is to

---

[3] The record contains testimony that this information was given before the administration of the requested test. The arresting police officer testified that after arriving at the police station he read to the defendant from a form which contained the advice of rights required to be given to arrested persons by the statute. After a short delay, occasioned by defendant's consumption of what appeared to be a breath mint, the Breathalyzer test was administered. The Breathalyzer examiner then attempted to repeat the test, again with defendant's consent, but the results of that test were invalid because of defendant's failure to properly breathe into the machine.

be taken or presumed, according to what is consonant to reason and good discretion,' *(Sibley v Smith, supra,* 492)."

Guided by these principles, we believe that the defendant's main argument unduly elevates form over substance.

The Legislature's primary objective in enacting this law was to provide a scientifically proven method of preserving relevant evidence of a defendant's physical condition at or near the time of his arrest for driving while under the influence of intoxicants. The specific section under discussion in this case gives an arrested person a right to demand an additional chemical test to be administered by a person of his own choosing. The chemical tests mentioned in the statute permit an examination of either blood, breath, saliva or urine in order to determine the blood alcohol content of the arrested person.

It is a well known fact, from a study of human physiology, that the presence of alcohol in the blood of a person who has consumed such substance is altered by normal body functions.[4] Thus, after the passage of a sufficient time period, an examination of a person's body chemistry might no longer produce results which are relevant or material evidence of the blood alcohol level at or near the time of the arrest.[5]

It is evident that the Legislature attempted to

---

[4] A more thorough description of the effects alcohol has on the consumer, and a discussion of various chemical tests used to detect the presence of alcohol is found in 4 Gray, Attorneys' Textbook of Medicine (3d ed), ch 133.

[5] Through the mathematical process of "extrapolation", an expert witness may be able to approximate a defendant's blood alcohol level at the time of arrest, in spite of a lengthy delay between the arrest and the chemical test. See Donigan, Chemical Tests and the Law, (Northwestern University, 2d ed, 1966) ch 4, p 46.

deal with these physiological problems. Rather than speaking in absolute terms, the statute requires that one charged with DUIL be "informed that he will be given a *reasonable opportunity* * * * within a *reasonable* time". The use of these terms evidences legislative concern with the possibility that delay in the administration of the chemical test could produce results which lack probative value. We are therefore convinced that the restrictive reading which the defendant urges us to adopt is improper and certainly not warranted in order to carry out the intent of the Legislature.

While it is clear that the police must give the statutorily required advice to the arrested person within a reasonable time after arrest so that the arrested person has a reasonable opportunity to take an additional chemical test before the blood alcohol level is materially altered by the passage of time, the statute does not mandate either the sequence in which the advice must be given or the specific time at which the arrested person should be informed of his right to have the additional test administered.

The right of which the defendant must be advised is the right to have an additional chemical test administered by a person of the defendant's choosing, *within a reasonable time after arrest.* This right is endangered only by delay. Therefore, a defendant is not prejudiced by a prompt appraisal of this right, but only by excessive delay, during which the blood chemistry of the defendant is materially altered by bodily functions.

Our examination of this right which the statutorily mandated "advice" seeks to protect leads us to the conclusion that the "advice" may be given either before or after the administration of the

police requested chemical test. *The exact timing of the advice of the additional test is not crucial so long as the defendant is offered a reasonable amount of time to obtain the additional chemical test.* The defendant's contention that the statute mandates that this information may not be given until the defendant has completed the police requested chemical test is without merit. The decisions of the trial judge, the circuit court and the Court of Appeals on this issue are affirmed.[6]

## II

The defendant has also raised an objection to the manner in which the trial judge instructed the jury concerning the distinction between the offense of driving under the influence of intoxicating liquor[7] (DUIL) and the offense of driving while the ability to operate a vehicle is visibly impaired[8] (IMPAIRED).

The trial judge, after describing the elements of each offense, then attempted to distinguish between them. When doing so he said:

"The legal difference between these two offenses are found in the two words—'material' and 'visible'. If you are to find the defendant guilty as charged, you must be persuaded by the evidence beyond a reasonable doubt that he was under the influence of intoxicants to the extent that his ability to operate the car was materially impaired. If you are to find him guilty of the included offense, you must be satisfied beyond a reasonable doubt from the testimony that his ability to operate the motor vehicle was visibly impaired.

"Now, while our Supreme Court—before there was an

---

[6] In light of our decision on this primary issue, our examination of defendant's other related issues reveals no reversible error.

[7] MCLA 257.625; MSA 9.2325.

[8] MCLA 257.625b; MSA 9.2325(2).

offense known as Driving While Visibly Impaired—defined Under the Influence of Intoxicants as meaning driving while materially impaired, they have not, since the included offense of visibly impaired was placed on the books by the Legislature, gotten around to telling us what the difference between material and visible is. * * *

"I don't know what the difference is. I can't see how a thing could possibly be visible without being material nor can I see how a thing could be material without being visible. Therefore, I can't tell you what the difference is between the major charge and the included offense in this area because I just don't know. Our Supreme Court has never gotten around to letting us know, nor has our Legislature. Now, if you people can figure out the difference between those two words, insofar as our law is concerned, then you go right ahead and do it."

Thus the jury was encouraged to give legal substance to the phrases and then determine whether defendant's conduct violated its own standards. In other words, the trial judge provided the jury an unrestricted license to supply legal meaning to both statutes.[9]

To the contrary, juries cannot be allowed to speculate. It is the function of the court to inform the jury of the law by which its verdict must be controlled.[10] The purpose of instructions is to enable the jury to understand and apply the law to the facts of the case. The accused has a right to have a jury pass upon the evidence under proper instructions. *People v Potter,* 5 Mich 1 (1858); *People v Knoll,* 258 Mich 89; 242 NW 222 (1932); *People v Visel,* 275 Mich 77; 265 NW 781 (1936).

[9] With the amendments to MCLA 257.625a; MSA 9.2325(1) which became effective (March 30, 1972) after the date of this trial it is doubtful that the trial judge would feel the same frustrations.

[10] *McKine v Sydor,* 387 Mich 82; 194 NW2d 841 (1972); *People v MacPherson,* 323 Mich 438; 35 NW2d 376 (1949).

The judge looks to this Court for guidance and we will not disappoint him or others who may have experienced the same frustration.

After reading to the jury the pertinent portions of the statute under which defendant is charged, the judge may give the following instruction which we find to express legislative intent:

"The distinction between the crime of driving under the influence of intoxicating liquor and the lesser included offense of driving while ability is visibly impaired is the degree of intoxication which the people must prove.

"To prove driving under the influence of intoxicating liquor, the people must prove that defendant's ability to drive was substantially and materially affected by consumption of intoxicating liquor.

"To prove driving while ability is visibly impaired, the people must prove that defendant's ability to drive was so weakened or reduced by consumption of intoxicating liquor that defendant drove with less ability than would an ordinary, careful and prudent driver. Such weakening or reduction of ability to drive must be visible to an ordinary, observant person."

Considering the instructions as a whole, we are convinced that the quoted comments of the trial judge so overshadowed the remainder of the instructions as to deny the defendant his right to a fair trial.

Reversed and remanded for retrial.

T. G. KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ., concurred with COLEMAN, J.

FITZGERALD and LINDEMER, JJ., took no part in the decision of this case.