## PEOPLE v CRAUN

Docket No. 87158. Submitted November 12, 1986, at Lansing. Decided April 21, 1987. Leave to appeal applied for.

Russell Earl Craun was arrested and charged with operating a vehicle while under the influence of intoxicating liquor, operating a vehicle while possessing a blood alcohol content of 0.10% or more, and operating a vehicle while impaired, second or subsequent offense. After his arrest, defendant was taken to the Lake Orion police station by Officer Jeff Matte. At the station, defendant was read his rights concerning submitting to an alcohol test, including the right to have a blood test administered by a person of his own choosing. Defendant was given a Breathalyzer test and, thereafter, requested an independent blood test. Officer Matte responded to the request by handing defendant a telephone book and allowing him to make a number of telephone calls. Defendant called approximately six doctors, who all declined to administer the test on the basis that defendant was not one of their patients. Defendant told Matte that he could not find anyone to administer the test and Matte responded that there was nothing that Matte could do about it. Defendant quit making calls and said "forget it." Matte told defendant that he could make an additional call if he could think of a physician to contact and that an officer would provide transportation to and from the physician's office in order to obtain the test. Pontiac Osteopathic Hospital is located approximately a quarter mile from the police station. It was the policy of the Lake Orion police to provide suspects with transportation, within a reasonable distance, to obtain a blood test. In the past, suspects have been transported to both the Pontiac Osteopathic Hospital and Pontiac General Hospital to obtain a blood test. At no time did Matte inform defendant that

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 305 et seq.; 375, 377, 378, 380, 384.

Drunk driving: motorist's right to private sobriety test. 45 ALR4th 11.

Driving while intoxicated: duty of law enforcement officer to offer suspect chemical sobriety test under implied consent law. 95 ALR3d 710.

he could go to Pontiac Osteopathic Hospital for a blood test or that Pontiac General administers such tests. Rather, after defendant gave up on trying to find a physician, Matte locked defendant up for the evening. The district court dismissed the charges against defendant. The people appealed and the Oakland Circuit Court, Martin B. Breighner, J., affirmed. The people appealed by leave granted.

The Court of Appeals *held:*

Where the police are aware of an available testing site within a reasonable distance from the station, they must share that information with a suspect who has expressed a desire to have a test but has been unable to secure one.

Affirmed.

GRIBBS, J., dissented. He would hold that the statute does not require the police to find an individual to administer a chemical test to every defendant. He would reverse.

AUTOMOBILES — CHEMICAL TESTS — BLOOD ALCOHOL.

A person who takes a chemical test to determine blood alcohol content at the request of a peace officer shall be given a reasonable opportunity to have another test administered by a person of his choice; where the police are aware of an available testing site within a reasonable distance from the station, they must share that information with a suspect who has expressed a desire to have a test but has been unable to secure one (MCL 257.625a[5]; MSA 9.2325[1][5]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *John L. Kroneman,* Assistant Prosecuting Attorney, for the people.

*Lyon, Colbert & Bullard* (by *Mark Weston Lyon*), for defendant.

Before: R. B. BURNS, P.J., and GRIBBS and A. T. DAVIS,* JJ.

R. B. BURNS, P.J. Defendant was charged, inter alia, with operating a vehicle while under the influence of intoxicating liquor, MCL 257.625(1);

* Circuit judge, sitting on the Court of Appeals by assignment.

MSA 9.2325(1), operating a vehicle while possessing a blood alcohol content of 0.10 percent or more, MCL 257.625(2); MSA 9.2325(2), and operating a vehicle while impaired, second or subsequent offense, MCL 257.625b(1) and (3); MSA 9.2325(2)(1) and (3). The district court dismissed these counts and the circuit court affirmed the dismissal. The prosecutor now appeals and we affirm.

After his arrest, defendant was taken to the Lake Orion Police Department police station by Officer Jeff Matte. At the station, defendant was read his rights concerning submitting to an alcohol test, including the right to have a blood test administered by a person of his own choosing. See MCL 257.625a; MSA 9.2325(1). Defendant was given a Breathalyzer test and, thereafter, requested an independent blood test. Officer Matte responded to the request by handing defendant a telephone book and allowing him to make a number of telephone calls.

Defendant first called his psychiatrist, who declined to administer the test on the basis that he was no longer a practicing physician. Defendant called approximately six other doctors, who all declined to administer the test on the basis that defendant was not one of their patients. Defendant told Matte that he could not find anyone to administer the test and Matte responded that there was nothing that Matte could do about it. Defendant quit making calls and said "forget it." Matte told defendant that he could make an additional call if he could think of a physician to contact and that an officer would provide transportation to and from the physician's office in order to obtain the test.

As indicated in the dissent, Pontiac Osteopathic Hospital is located approximately a quarter mile from the police station. It was the policy of the

police department to provide suspects with transportation, within a reasonable distance, to obtain a blood test. In the past, suspects have been transported to both the Pontiac Osteopathic Hospital and Pontiac General Hospital to obtain a blood test. At no time did Matte inform defendant that he could go to Pontiac Osteopathic Hospital for a blood test or that Pontiac General administers such tests. Rather, after defendant gave up on trying to find a physician, Matte locked defendant up for the evening to be bonded out in the morning.

In reaching its decision, the trial court stated:

> The court further finds that Lake Orion Police Department has no procedure regarding granting any defendants their rights to a blood test, except for those that are enumerated by Officer Matte, that—and in this case, that the defendant was given a phone and given a telephone book.
> The court finds that that's unreasonable to the extent that, if somebody is arrested, they still have the right, and if they don't know a doctor and they don't know a place, that does not preclude—the statute does not say that precludes them from having that right. The court reads into the right as Mr. Halushka has stated, that the defendant has his choice, but the fact is if somebody doesn't know a doctor, especially at four in the morning, or he doesn't know a doctor to call or he doesn't know a hospital, if he doesn't know the area, then he doesn't lose his right just because he doesn't know these things. A person from out of state could come in and have the same rights.
>
> * * *
>
> Based upon that, the court finds that the defendant was deprived of his right to obtain evidence to defend himself and, where there is a depriving of a defendant of his right to defend himself, there's no way that person can get a fair trial. Even if any and all evidence was used against him,

he does not have the opportunity to properly defend himself and that precludes the opportunity of having a fair trial. Based upon that, the court will dismiss the drunk driving case against Mr. Craun.

MCL 257.625a(5); MSA 9.2325(1)(5) provides in part:

> A person who takes a chemical test administered at the request of a peace officer, as provided in this section, shall be given a *reasonable opportunity* to have a person of his or her own choosing administer 1 of the chemical tests described in this section within a reasonable time after his or her detention, ·and the results of the test shall be admissible and shall be considered with other competent evidence in determining the innocence or guilt of the defendant. [Emphasis added.]

The resolution of this case centers on the proper interpretation of the words "reasonable opportunity." The trial court made a factual finding that defendant was not afforded a *reasonable* opportunity to obtain an independent blood test. We review that finding of fact to determine if it is clearly erroneous. MCR 2.613(C). We conclude that it was not.

The Legislature granted drunk driving suspects the right to obtain chemical tests independent of a police administered test. Moreover, it is not sufficient that a suspect merely be given an opportunity to obtain a test. Rather, that opportunity must be a *reasonable* one. We agree with the courts below that merely handing a suspect a telephone book and a telephone is insufficient. That would render the right to an independent blood test ineffective where the suspect is unaware of a physician or medical facility which would be

willing to perform such a test in the middle of the night.

The dissent places great emphasis on the language in the statute that the independent test is to be performed by a person of the suspect's own choosing. While we agree that the language says that the suspect, and not the police, decides who will administer the test, we do not read it to be as broad a limitation on the role of the police as the dissent suggests. Rather, it merely assures that the suspect makes the final selection, not the police.

We also dismiss the dissent's concern that, had the police suggested a place where defendant could have obtained a blood test, defendant could have argued that the test was not independent. Such problems are easily avoided by the police not making any suggestions until *after* a suspect requests information about a testing facility or where, as here, a suspect indicates that he is unable to find anyone willing to administer the test.

We do not suggest that the police must become actively involved in the suspect's search for a testing facility. Rather, we conclude that, where the police are aware of an available testing site within a reasonable distance from the station, they must share that information with a suspect in order to satisfy the reasonable opportunity standard granted in the statute.

The trial court's conclusion that defendant was not given a reasonable opportunity to obtain an independent test was not clearly erroneous. Accordingly, it properly dismissed the alcohol-related driving charges against defendant. See *People v Underwood,* 153 Mich App 598; 396 NW2d 443 (1986).

Affirmed.

A. T. Davis, J., concurred.

Gribbs, J. *(dissenting)*. I respectfully dissent.

On November 12, 1983, Officer Jeff Matte of the Lake Orion Police Department arrested defendant for running a stop sign, fleeing from a police officer, and driving while under the influence of intoxicating liquor. Defendant was taken to the police station, where another officer gave him a Breathalyzer test. Officer Matte read defendant his rights, including the right to have a blood test administered by a person of his own choosing. Defendant requested that an independent blood test be taken. Officer Matte informed defendant that he "had no problem with that" and told him to find his own physician to do so. Matte gave defendant a telephone book, and defendant made five to seven telephone calls. Defendant called his psychiatrist, who said that he could not do the blood test because he was no longer a practicing physician. He called some other doctors who would not come out and give him a blood test since he was not one of their patients. As far as Matte knew, defendant was unable to find a doctor who would perform the test.

After he made the telephone calls, defendant told Matte that he could not get anybody to do the test, and Matte responded that there was nothing he could do about it. According to Matte, defendant "quit making telephone calls on his own; he just kind of gave up and said 'forget it.'" Matte told defendant that "was fine," and that he could make another telephone call if he could think of someone who would give him the test, and an officer would take him to get the test. Defendant never made a request to go to Pontiac Osteopathic Hospital or any other hospital for a blood test, although it was established that Matte could have

taken defendant to Pontiac Osteopathic Hospital, which was about a quarter of a mile away. Matte testified that when defendant was arrested he *did not know* who could give blood tests and that he would have advised defendant that Pontiac Osteopathic gave blood tests *had he known* that at the time. Such testimony was not contradicted or rejected by the trial court. The pertinent portion of Matte's testimony at the hearing reveals the following:

> *The Court:* Okay. Now, let's presume for the sake of discussion that you have somebody from Cleveland, Ohio, that has been arrested, and you advise them that he has a right to a—after taking the breath test, to a blood test. And let's presume for the sake of discussion he doesn't know any hospitals in the area or he doesn't know any doctors in the area and the like. Does he still have that right to a blood test?
>
> *The Witness:* Yes.
>
> *The Court:* And how does he obtain that blood test then, if he doesn't know anybody in the area? How does he keep his right?
>
> *The Witness:* I would do what I did with this gentleman; I would hand him the phone book and advise him that we do have hospitals in the area and at this point I wasn't aware of who could give blood tests *at that point.* I am *now aware* that Pontiac General and Pontiac Osteopathic will give blood tests, so I would have advised him of that, *if I had known.* [Emphasis added.]

The policy of the Lake Orion Police Department was to allow defendants an opportunity to seek an independent blood test and to take them anywhere within reason to get the test. Defendant could have obtained a blood test at Pontiac Osteopathic Hospital if he had requested one.

The trial court ruled that the burden of obtain-

ing an independent blood test was on the people and that defendant was denied his right to such a test by the Lake Orion Police Department's procedures. Consequently, it dismissed the drunk driving case against defendant.

The Oakland Circuit Court affirmed. I would reverse.

A person who takes a Breathalyzer test at a police officer's request "shall be given a reasonable opportunity to have a person of his or her own choosing" administer another chemical test within a reasonable time after his or her detention, MCL 257.625a(5); MSA 9.2325(1)(5).

Clearly, a defendant must be apprised of his right to obtain an independent chemical test. See *People v Lambert,* 395 Mich 296, 302; 235 NW2d 338 (1975). In addition, police officers cannot hamper a defendant who has made arrangements for an independent chemical test. See *People v Underwood,* 153 Mich App 598; 396 NW2d 443 (1986). However, I disagree with the district and circuit courts' conclusion that police officers must affirmatively assist a person in obtaining an independent chemical test beyond what was done in this case. It is uncontradicted that at the time of defendant's arrest Officer Matte did not know that local hospitals administered blood tests. The statute itself provides that a defendant may have an *independent* test administered by a person of *his or her own choosing.* This language suggests that the Legislature intended that the burden of obtaining an independent test rests on the defendant, and not the police. Police officers are not required to affirmatively assist a defendant in obtaining an independent chemical test beyond allowing him to call persons of his own choosing and making transportation available. The majority places a burden upon the police to locate a place for additional

tests even though the defendant made no such
request. If the officers had suggested a place where
defendant could obtain a blood test, the possibility
exists that a defendant could argue that the test
was not "independent." I conclude that the statute
does not require the police to find an individual to
administer a chemical test to every defendant.

The Massachusetts Supreme Court reached a
similar conclusion in *Commonwealth v Alano,* 388
Mass 871, 879-880; 448 NE2d 1122 (1983). It noted:

> The cases from other jurisdictions, *supra,* con-
> cern the scope of a due process, rather than a
> statutory, right to a reasonable opportunity to
> have an independent examination, but we find the
> principles sufficiently analogous to be relevant to
> our interpretation of the statute. *These cases take
> the view that, while the police cannot hamper the
> defendant's attempt to obtain a blood alcohol con-
> tent sample, they need not assist him.* Thus, it has
> been held that the police cannot constitutionally
> refuse to allow the accused to call a physician, or
> other person who could arrange for a physical
> examination. *Smith v Cada,* 114 Ariz 510, 514 [562
> P2d 390] (Ariz App, 1977). *In re Newbern,* 175 Cal
> App 2d 862, 866 [1 Cal Rptr 80] (1959). *State v
> Munsey,* 152 Me 198, 200-203 [127 A2d 79] (1956).
> See *People v Burton,* 13 Mich App 203 [163 NW2d
> 823] (1968) (defendant's due process rights violated
> when police officer called defendant's physician,
> was informed that he was unavailable, and failed
> to advise the defendant that his physician had not
> been summoned). . . .
>
> We conclude that under G.L. c. 263, § 5A, the
> police must not prevent or hinder an individual's
> timely, reasonable attempts to obtain an indepen-
> dent examination, but they need not assist him.
> They need only inform him of his rights and allow
> him access to a telephone. We note, however, that
> the meaning of a "reasonable opportunity" to
> obtain an examination may vary depending on the
> circumstances. In appropriate circumstances the

police might well be obliged to allow communication by an accused beyond the single telephone call required by statute. However, in the present case there are no allegations of unusual factors. *We conclude that, as there is no evidence that the police hindered the defendant's attempts to secure an independent physical examination, or failed to inform the defendant of his statutory right to such an examination, the defendant was not denied a reasonable opportunity to obtain an examination* under G.L. c. 263, § 5A. Accordingly, the motion to dismiss was properly denied and the judgment of conviction is affirmed.

See also *Harper v State,* 164 Ga App 230, 230-231; 296 SE2d 782 (1982).

I would reverse.