Per Curiam.
 

 We granted respondent Secretary of State’s delayed application for leave to appeal a decision of the circuit court setting aside respondent’s revocation of the driver’s license of petitioner Gywndalin Gil Oxendine. We affirm.
 

 I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 On March 25, 1991, Oxendine pleaded guilty of “impaired driving” in North Carolina in violation of NC Gen Stat 20-138.1 as in effect at the time of the
 
 *348
 
 North Carolina crime. On June 4, 1997, she was convicted in Michigan of operating a motor vehicle while under the influence of liquor (ouil, also commonly referred to as DUIL), MCL 257.625(1); MSA 9.2325(1). Thereafter, respondent revoked Oxendine’s driver’s license under MCL 257.303(2)(c)(i); MSA 9.2003(2)(c)(i)
 
 [1]
 
 on the basis of Oxendine’s having both the Michigan ouil conviction and the North Carolina conviction, which respondent deemed substantially corresponded to a Michigan ouil conviction, within a seven-year period. Oxendine unsuccessfully pursued an administrative appeal within respondent’s department and then appealed to the circuit court. The circuit court ultimately set aside the revocation of Oxendine’s driver’s license. Apparently, the trial court accepted Oxendine’s position that the North Carolina law she was convicted of violating did not substantially correspond to the Michigan crime of OUIL, subsection 625(1), and thus could not properly be considered as a second conviction (in addition to Oxendine’s Michigan ouil conviction) that would justify revocation of her driver’s license under subsection 303(2)(c)(i).
 

 H. STANDARD OF REVIEW
 

 MCL 257.303; MSA 9.2003 authorized the circuit court to review respondent’s decision to revoke Oxendine’s license for a substantial and material error of law. This case turns on a question of law, in particular a question of statutory construction. We review
 
 *349
 
 questions of statutory construction de novo.
 
 Johnson v Secretary of State,
 
 224 Mich App 158, 160; 568 NW2d 373 (1997).
 

 HI. THE REVOCATION OF OXENDINE’S LICENSE
 

 Respondent argues that the trial court erred in setting aside its revocation of Oxendine’s driver’s license on the ground that the pertinent Michigan and North Carolina laws do not substantially correspond. We disagree.
 

 A. THE PERTINENT STATUTORY PROVISIONS
 

 Subsection 303(2)(c)(i), the statutoiy provision under which respondent purported to revoke Oxendine’s driver’s license, provides:
 

 Upon receiving the appropriate records of conviction, the secretary of state shall revoke the operator’s or chauffeur’s license of a person having any of the following, whether under a law of this state, a local ordinance substantially corresponding to a law of this state,
 
 or a law of another state substantially corresponding to a law of this state:
 

 (c) Any combination of 2 convictions within 7 years for any of the following:
 

 (i) A violation of section 625(1). [Emphasis supplied.]
 

 Subsection 625(1), which provides for the crime of OUIL in Michigan, states:
 

 A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if either of the following applies:
 

 
 *350
 
 (a) The person is under the influence of intoxicating liquor, a controlled substance, or a combination of intoxicating liquor and a controlled substance.
 

 (b) The person has an alcohol content of 0.10 grains or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.
 

 As in force at the time of defendant’s North Carolina crime and conviction, the North Carolina impaired driving statute, NC Gen Stat 20-138.1(a), established the following as the crime of “impaired driving”:
 

 A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:
 

 (1) While under the influence of an impairing substance; or
 

 (2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.10 or more.[
 
 2
 
 ]
 

 It is also noteworthy that subsection 625(3), which defines the Michigan misdemeanor of operating while impaired (owi, also commonly referred to as dwi), provides:
 

 A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of an intoxicating liquor, a controlled substance, or a combination of an intoxicating liquor and a controlled substance, the person’s ability to operate the vehicle is visibly impaired. If a person is
 
 *351
 
 charged with violating subsection (1) [the ouil provision], a finding of guilty under this subsection may be rendered.
 

 B. ANALYSIS
 

 (1) DRIVING “UNDER THE INFLUENCE OF AN IMPAIRING SUBSTANCE”
 

 We note at the outset that it is undisputed that Oxendine’s North Carolina conviction of impaired driving was based on a determination that she violated the more general portion of NC Gen Stat 20-138.1 that prohibits driving “[w]hile under the influence of an impairing substance,”
 
 not
 
 on a violation of the more specific prohibition of that statute against driving with “an alcohol concentration of 0.10 or more.”
 
 [3]
 
 Accordingly, we confine our analysis to whether a conviction of violating the North Carolina impaired driving statute based solely on a finding that one drove “[w]hile under the influence of an impairing substance” substantially corresponds to the Michigan crime of OUIL. We express no opinion regarding whether a North Carolina conviction of impaired driving based on driving with “an alcohol concentration of 0.10 or more” should be considered to substantially
 
 *352
 
 correspond to a conviction of the Michigan crime of OUIL for purposes of subsection 303(2)(c)(i).
 

 (2) LANGUAGE VERSUS LAW
 

 In pertinent, part, the Michigan ouil statute generally prohibits operating a vehicle while “under the influence of intoxicating liquor, a controlled substance, or a combination of intoxicating liquor and a controlled substance.” On its face, the North Carolina statute appears quite similar in generally prohibiting driving a vehicle while “under the influence of an impairing substance.” However, this facial similarity is complicated in large part because the meaning of the pivotal phrase in both statutes “under the influence” is far from clear. North Carolina law defines the pertinent part of the North Carolina impaired driving statute as reaching far more conduct than Michigan jurisprudence construes the pertinent part of the ouil statute as reaching. We suspect this is in large part because Michigan has two basic “drunk driving” crimes, OUIL and owi,
 
 [4]
 
 while North Carolina apparently has only the one basic offense of impaired driving.
 
 [5]
 

 [6]
 
 In this regard, subsection 303(2)(c)(i) does not state that a conviction in another state may be considered to substantially correspond to a Michigan OUIL conviction merely if the
 
 language
 
 of the pertinent out-of-state statute is highly similar to the language of the
 
 *353
 
 OUIL statute. Rather, subsection 303(2)(c)(i) requires “a
 
 law
 
 of another state” (emphasis supplied) to substantially correspond to the ouil statute in order for a conviction of a violation of that other state’s law to be considered as one of the two necessary convictions for revocation of a driver’s license.
 

 The meaning of a law that is not clear from its face is determined in large part by judicial construction, see
 
 Rowell v Security Steel Processing Co,
 
 445 Mich 347, 353; 518 NW2d 409 (1994) (“[w]here the language employed by the Legislature is susceptible to more than one interpretation, judicial construction is justified”), as well as by other pertinent statutory provisions. Thus, despite the linguistic similarity of the pertinent parts of the OUIL statute and the North Carolina impaired driving statute, we conclude that, because the authoritative construction of the latter statutory provision in North Carolina jurisprudence does not substantially correspond to the interpretation of the OUIL statutory provision in Michigan jurisprudence, the two laws do not substantially correspond for purposes of subsection 303(2)(c)(i).
 

 (3)
 
 LAMBERT
 

 With regard to the pertinent “under the influence” part, of the Michigan OUIL statutory provision, the key instructive description of that offense comes from the decision in
 
 People v Lambert,
 
 395 Mich 296; 235 NW2d 338 (1975). In
 
 Lambert,
 
 at 305, the Michigan Supreme Court provided an explanation of the difference between the “under the influence” version of OUIL and the separate crime of owi in the form of a jury instruction that the trial court could use on remand to explain the difference to jurors. The Court
 
 *354
 
 indicated that OUIL would be committed if a defendant drove when the “defendant’s ability to drive was
 
 substantially and materially affected
 
 by consumption of intoxicating liquor.”
 
 Id.
 
 (emphasis supplied). An alternative formulation of this test for OUIL is whether “ ‘the person is substantially deprived of [his/her] normal control or clarity of mind at the time [he/she] is operating the motor vehicle.’ ”
 
 People v Walters,
 
 160 Mich App 396, 400; 407 NW2d 662 (1987), quoting CJI 15:1:01(8).
 

 In contrast, the threshold for owi is much lower. A defendant commits owi by driving when the “defendant’s ability to drive was so weakened or reduced by consumption of intoxicating liquor that defendant drove with less ability than would an ordinary, careful and prudent driver. Such weakening or reduction of ability to drive must be visible to an ordinary, observant person.”
 
 Lambert, supra
 
 at 305. Accordingly, owi is a lesser included offense of OUIL.
 
 People v Pipkin,
 
 93 Mich App 817, 819; 287 NW2d 352 (1979).
 

 We note that, in our view, the fact that the Legislature established OUIL and OWI as separate crimes, rather than simply establishing a single basic “drunk driving” or “intoxicated driving” crime that included the substance of both crimes, indicates that the Legislature classified OUIL and owi as substantially
 
 different
 
 crimes. Further, owi and the “under the influence” version of OUIL are in a hierarchical relationship, because any person who drives while so affected by consumption of alcohol or a controlled substance as to be “substantially and materially affected” and thus commit OUIL,
 
 Lambert, supra
 
 at 305, would plainly always also be so affected that the person’s driving ability would be “visibly impaired” and thus constitute
 
 *355
 
 owi,
 
 id.
 
 Thus, we conclude as a starting point for our analysis that a statute of another state that is substantively equivalent to Michigan’s OWI statutory provision would not substantially correspond to the more stringent Michigan OUIL statutory provision. Rather, to substantially correspond to the OUIL statutory provision, a statute of another state must be limited in scope to conduct that reasonably approximates the narrower crime of OUIL, as opposed to merely approximately the more broadly defined crime of OWI.
 

 While the North Carolina impaired driving statute does not itself define its use of the phrase “under the influence of an impairing substance,” that phrase is defined elsewhere in the North Carolina statutes as “ [t]he state of a person having his physical or mental faculties, or both,
 
 appreciably impaired
 
 by an impairing substance.” NC Gen Stat 20-4.01(48a) (emphasis supplied). This statutory definition indicates on its face that conviction of impaired driving in North Carolina on the basis of being “under the influence of an impairing substance” requires in pertinent part only that one’s driving ability be appreciably, or in other words noticeably, impaired. This is strikingly similar to the requirement of a visible reduction in driving ability for the Michigan crime of owi, while considerably less than the substantial and material impairment required for OUIL. See
 
 Lambert, supra
 
 at 305. Even more to the point, the North Carolina Court of Appeals explained in
 
 State v Harrington,
 
 78 NC App 39, 45; 336 SE2d 852 (1985), that the prosecution does
 
 not
 
 need to show that a defendant’s “faculties are materially impaired” in order to establish the commission of impaired driving, but rather only an effect that is “appreciable, that is, sufficient to be rec
 
 *356
 
 ognized and estimated, for a proper finding that defendant was impaired.”
 
 [6]
 

 Id.
 
 This is a standard considerably below—and in marked contrast to—the substantial and material impairment required for commission of ouil based on driving “under the influence” in Michigan,
 
 Lambert, supra
 
 at 305. Thus, we conclude that, in violating the portion of North Carolina’s impaired driving statute regarding driving “under the influence of an impairing substance,” Oxendine did not violate a law of another state that substantially corresponds to the Michigan crime of OUIL. Accordingly, respondent erred in considering Oxendine’s North Carolina conviction as an essential part of its decision to revoke her license on the basis of subsection 303(2)(c)(i). The trial court properly held that respondent erred in revoking Oxendine’s license under subsection 303(2)(c)(i).
 
 [7]
 

 
 *357
 
 (4)
 
 OLMSTEAD
 

 While not crucial to our decision, we note that we find support for our conclusion in the out-of-state authority of
 
 Olmstead v Commonwealth,
 
 677 A2d 1285 (Pa Commw, 1996), aff’d on other grounds 550 Pa 578; 707 A2d 1144 (1998), a case cited by Oxendine. In
 
 Olmstead,
 
 the appellant was convicted in New York of that state’s offense of “Driving while ability impaired.” 677 A2d 1285. This New York offense would be committed by a defendant driving in any case in which “ ‘by voluntarily consuming alcohol, this particular defendant has actually impaired, to any extent, the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver.’ ”
 
 Id.
 
 at 1287, quoting
 
 People v Cruz,
 
 48 NY2d 419, 427; 423 NYS2d 625; 399 NE2d 513 (1979). The Pennsylvania Commonwealth Court in
 
 Olmstead, supra
 
 at 1288, held that the New York offense was “not substantially similar” to the Pennsylvania offense of “Driving under the influence” (DUl), which required proof either of blood alcohol level of 0.10 or greater or “that the driver, operator or person in actual physical control of the motor vehicle was influenced by alcohol to a degree that he or she could not drive safely.”
 
 Id.
 
 at 1287. The court observed that the Pennsylvania DUl offense could not reasonably be interpreted to consist of “any alcohol-related impairment, no matter how minor, where that impairment does not affect a person’s ability to be a safe driver.”
 
 Id.
 
 While from the opinion in
 
 Olmstead
 
 it appears that the New York offense of “Driving while ability impaired” creates an even broader range of prohibited conduct than the North Carolina impaired driving statute,
 
 Olmstead
 
 is instructive in indicating
 
 *358
 
 that two alcohol-related driving offenses are not substantially similar
 
 [8]
 
 if they have markedly different thresholds for establishing a violation. In the case at hand, the respective thresholds for establishing a violation of the pertinent portions of the North Carolina impaired driving statute and the Michigan ouil statutory provision differ greatly, even if not as greatly as the pertinent offenses in
 
 Olmstead.
 

 We note that, in large part, respondent relies on asserted similarities between the available punishments for impaired driving in North Carolina and OUIL in Michigan. However, we find those considerations unimportant. This Court has previously concluded in this context “that it is the
 
 offense,
 
 rather than the
 
 penalty,
 
 that must ‘substantially correspond’ to the Michigan statute.”
 
 Johnson, supra
 
 at 162 (emphasis in the original).
 

 IV. CONCLUSION
 

 We conclude that a violation of the North Carolina impaired driving statute, NC Gen Stat 20-138.1, based on a finding that a person drove “[w]hile under the influence of an impairing substance” does not constitute a violation of a law of another state that substantially corresponds to the Michigan crime of ouil. As a result of its mistaken belief that Oxendine’s North Carolina violation substantially corresponded to OUIL, respondent improperly revoked Oxendine’s driver’s license. Thus, the trial court properly set aside the revocation.
 

 Affirmed.
 

 [1]
 

 Hereinafter, we will refer to MCL 257.303; MSA 9.2003 as “Section 303” or “§ 303” and to MCL 257.625; MSA 9.2325 as “Section 625” or “§ 625.”
 

 [2]
 

 This statute has subsequently been amended, effective in October 1993, to reduce the level of alcohol concentration it requires to 0.08. That amendment is immaterial to the issue in this case.
 

 [3]
 

 The pertinent judgment indicates that the date of Oxendine’s North Carolina offense was December 7, 1990. An “Affidavit and Revocation Report of Chemical Analyst” report from Wake County, North Carolina, that is included in the lower court record indicates that Oxendine wilfully refused to submit to a chemical analysis of her alcohol level on December 8, 1990, at 12:31 A.M. Thus, it appears that no chemical analysis of the level of alcohol in Oxendine’s blood, breath, or urine was ever conducted in relation to the North Carolina incident. We recognize that it is ironic and quite unfortunate that Oxendine’s apparent refusal to submit to a chemical analysis in connection with the North Carolina crime may well have worked to her benefit in the circumstances of this case.
 

 [4]
 

 Of course, Michigan has further “drunk driving” crimes based on the commission of oun, or owi with the aggravating circumstance of the conduct resulting in death or serious impairment of a bodily function of another person. Subsections 625(4), (5).
 

 [5]
 

 Thus, if conduct that would constitute owi in Michigan were not classified by North Carolina as impaired driving, such conduct could evidently not be prosecuted as a “drunk driving” offense at all in that state.
 

 [6]
 

 However, the court did note that “[a]n effect, however slight, on the defendant’s faculties, is not enough to render him or her impaired.”
 
 Harrington, supra
 
 at 45.
 

 [7]
 

 Respondent notes language from the following paragraph in
 
 Johnson, supra
 
 at 163:
 

 The offense of drunken driving is defined in similar terms under the Michigan and Wisconsin statutes at issue. Both statues contain a provision for unlawful blood alcohol and create an offense per se if the blood alcohol content is in excess of a stated amount. Thus, the behavior proscribed by the Wisconsin statute substantially corresponds to the behavior proscribed in § 625. [Citations omitted.]
 

 This case is distinguishable from
 
 Johnson
 
 because, as we have explained, the definitions of the proscribed “drunk driving” conduct under the pertinent Michigan and North Carolina laws are not similar but are markedly different. We also note that the pivotal issue in
 
 Johnson
 
 was whether a finding of a violation of another state’s statute could be considered a “conviction” under a provision of § 303 even though the other state treated that violation as a civil infraction rather than a crime, an issue not pertinent to the case at hand.
 

 [8]
 

 We see no difference between concluding that two violations are not substantially similar and concluding that they do not substantially correspond.