# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

GREGORY SCOTT MIKULEN,

      Defendant-Appellee.

FOR PUBLICATION
April 24, 2018
9:05 a.m.

No. 337003
Jackson Circuit Court
LC No. 16-001227-AR

Before: MURPHY, P.J., and JANSEN and SWARTZLE, JJ.

MURPHY, P.J.

The prosecution appeals by leave granted the circuit court's order that vacated defendant's conviction in the district court of operating a motor vehicle while visibly impaired (OWVI), MCL 257.625(3).[1] The district court jury acquitted defendant of the greater charge of operating a motor vehicle while intoxicated (OWI), MCL 257.625(1). The prosecution argues that the circuit court erred by ruling that there was insufficient evidence to convict defendant of OWVI. The circuit court concluded that it was necessary for the prosecution to present evidence showing that defendant was seen operating his vehicle in an impaired manner in order to obtain a conviction for OWVI. The circuit court found that no such evidence was submitted to the jury. Indeed, according to the circuit court, the only evidence regarding defendant's actual driving was the arresting officer's testimony that indicated that defendant was not driving in an erratic, improper, or impaired manner. The circuit court therefore determined that the district court erred in submitting the OWVI offense to the jury. We hold that the circuit court misconstrued MCL 257.625(3), given that the crime of OWVI does not require proof that a person was operating a motor vehicle in an impaired manner. The offense does require proof that a *person's ability* to operate a motor vehicle was visibly impaired, and we conclude that this evidentiary mandate compels a prosecutor to proffer evidence of a visual or observational nature, i.e., evidence describing or depicting actions, conduct, characteristics, or movements of the person during the pertinent time period, revealing an impaired ability relevant to operating a vehicle. In the instant case, the prosecution presented, in part, evidence that defendant had glassy, bloodshot eyes and failed sobriety tests, and while there was evidence of errors by the arresting officer in conducting

---

[1] *People v Mikulen*, unpublished order of the Court of Appeals, entered June 27, 2017 (Docket No. 337003).

-1-

the tests, such errors went to the weight of the evidence. Moreover, the jury was permitted to assess whether defendant's ability to operate his vehicle was visibly impaired based on its viewing of the videotape of the stop and sobriety tests. We hold that there was sufficient evidence to support the conviction of OWVI and that there was no error in instructing the jury on OWVI. The circuit court also ruled that the district court erred in admitting blood-test evidence because of a foundational flaw, where the prosecution did not provide the testimony of the phlebotomist who drew defendant's blood, which lapse was not overcome through the testimony of other witnesses. We conclude that, assuming error, it was harmless for purposes of OWVI, considering the OWI acquittal and that untainted evidence established that defendant had consumed alcohol before driving. In sum, we reverse the circuit court's decision and remand for reinstatement of defendant's OWVI conviction.

The arresting officer observed defendant driving satisfactorily; he was not swerving, speeding, or driving abnormally in any way. The officer initiated a traffic stop because defendant's vehicle had a corroded, obscured license plate. The officer spoke with defendant and saw that defendant had glassy, bloodshot eyes and smelled of intoxicants. Defendant admitted to the officer that he had two or three beers. Consequently, the officer administered a few sobriety tests, the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-legged-stand test, which indicated to the officer's satisfaction that defendant was intoxicated. On cross-examination, the officer acknowledged that he made errors in conducting the HGN test and that he did not fully understand the clues of alcohol consumption relative to the walk-and-turn and one-legged-stand tests. The officer arrested defendant and, with defendant's consent, took him to a local hospital where a phlebotomist drew defendant's blood in the officer's presence. The officer sealed defendant's blood sample and mailed it to the Michigan State Police Crime Lab where a forensic scientist tested the sample and determined that defendant's blood alcohol content was 0.109 grams, exceeding the legal limit of 0.08 grams, MCL 257.625(1)(b).

The prosecution charged defendant with OWI, and over defendant's objection, the district court also instructed the jury on the lesser charge of OWVI. Defendant was convicted of OWVI, and he appealed the conviction to the circuit court. The circuit court interpreted MCL 257.625(3) – the OWVI provision – to require testimony by a witness who actually observed defendant driving in an impaired manner. Stated otherwise, the circuit court construed the statutory provision to demand proof of bad or erratic driving, i.e., impaired driving. The circuit court found that no such evidence was submitted to the jury and that, just to the contrary, the arresting officer testified that defendant was not driving in an impaired manner. Accordingly, the district court should never have instructed the jury on OWVI. The circuit court also ruled that the district court erred in admitting the blood-test evidence on the ground that there was no testimony that properly established the method and procedure used in conducting the blood draw, given that the phlebotomist who drew defendant's blood did not testify. The circuit court concluded that the absence of the phlebotomist at trial deprived defendant of his constitutional right of confrontation. In light of its rulings, the circuit court vacated defendant's OWVI conviction.

We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial

– in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). We review de novo the proper interpretation of a statute. *People v Martin*, 271 Mich App 280, 286-287; 721 NW2d 815 (2006). The determination regarding whether a jury instruction is applicable to the facts of a case is reviewed for an abuse of discretion; however, questions of law relative to jury instructions are reviewed de novo. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

The primary goal when interpreting a statute is to ascertain and give effect to the intent of the Legislature. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). To determine legislative intent, we first examine the specific language of the statute. *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). The Legislature is presumed to have intended the meaning that it plainly expressed. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 219; 731 NW2d 41 (2007). Judicial construction is only appropriate if reasonable minds could differ concerning the statute's meaning. *People v Warren*, 462 Mich 415, 427; 615 NW2d 691 (2000).

MCL 257.625 provides, in pertinent part, as follows:

(1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. As used in this section, "operating while intoxicated" means any of the following:

(a) The person is under the influence of alcoholic liquor, a controlled substance, or other intoxicating substance or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance [OUIL].

(b) The person has an alcohol content of 0.08 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine [UBAL] .
. . .

* * *

(3) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of alcoholic liquor, a controlled substance, or other

intoxicating substance, or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance, *the person's ability to operate the vehicle is visibly impaired.* If a person is charged with violating subsection (1), a finding of guilty under this subsection may be rendered. [Emphasis added.]

Subsection (1) of the statute concerns the offense of OWI, for which defendant was acquitted,[2] while subsection (3) regards OWVI. To convict a defendant under MCL 257.625(3), the Michigan Supreme Court has held that the prosecution must present evidence to establish beyond a reasonable doubt that consumption of alcohol weakened or reduced the defendant's ability to drive such that the defendant drove with less ability than would an ordinary, careful, and prudent driver. *People v Lambert*, 395 Mich 296, 305; 235 NW2d 338 (1975). Further, the prosecution must establish that the defendant's impaired ability to drive was " 'visible to an ordinary, observant person.' " *Id*. Our Supreme Court explained the difference between a violation of MCL 257.625(1)(a) (OUIL) and a violation of MCL 257.625(3) as follows:

> "The distinction between the crime of driving under the influence of intoxicating liquor and the lesser included offense of driving while ability is visibly impaired is the degree of intoxication which the people must prove." [*Id*.]

We find it quite evident that the Legislature enacted MCL 257.625(3), creating the offense of OWVI, to address those situations in which a defendant's level of intoxication and resulting impairment does not suffice to establish OWI, yet the defendant still presents a danger to the public because his or her "ability to operate the vehicle is visibly impaired."[3]

The plain language of MCL 257.625(3) does not require testimony of a person's impaired driving to satisfy the statutory burden necessitating proof that the *person's ability* to operate a vehicle was visibly impaired. In this case, the circuit court improperly read into the statute a requirement that the prosecution present evidence showing that defendant was operating his vehicle in an impaired manner. Courts, however, may not read into a statute that which is "not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). Further, Michigan case law has not interpreted MCL 257.625(3) as requiring testimony that a defendant's vehicle was being operated in a drunken or impaired manner. See *Lambert*, 395 Mich at 305 (couching its discussion in terms of a driver's ability). A close reading of the statutory language reflects that it is a "person's ability" to operate a vehicle that must be visibly impaired. MCL 257.625(3). In other words, the focus is on whether the person's capacity to drive was impaired as could be observed by another. Although proof that a vehicle was being operated in an

---

[2] With respect to OWI, the jury was instructed to consider both OUIL and UBAL as alternate theories of criminal liability, MCL 257.625(1)(a) and (b).

[3] As indicated, for purposes of OWVI, the prosecution must show that a defendant drove with less ability than an ordinary, careful, and prudent driver, while with respect to OWI, under an OUIL theory, the prosecution must show that a defendant's ability to operate a vehicle was "substantially" lessened. *Lambert*, 395 Mich at 305; *Oxendine v Secretary of State*, 237 Mich App 346, 354; 602 NW2d 847 (1999); M Crim JI 15.3(2).

impaired manner, e.g., weaving from side to side, would of course greatly strengthen a prosecutor's case by indicating that a defendant's ability to drive was visibly impaired, the statute does not compel such proof to convict a defendant.

The offense of OWVI does require proof that a person's ability to operate a motor vehicle was visibly impaired, MCL 257.625(3), and we hold that this evidentiary mandate demands that a prosecutor present evidence describing or depicting actions, conduct, characteristics, or movements of the person during the pertinent time period, revealing an impaired ability relevant to operating a vehicle. Such evidence would be visual or observational in nature, thereby giving meaning to the term "visibly," as used in MCL 257.625(3). And the visibility of an impairment, under the grammatical construct of MCL 257.625(3), goes to the visibility of a driver's ability to operate a vehicle, not the visibility of the vehicle's movements or driving itself.[4] If there is no evidence that a defendant was actually operating his or her vehicle in an impaired or erratic manner, a prosecutor can nevertheless seek to establish that the defendant's ability to operate the vehicle was visibly impaired by evidence of, for example, the defendant failing a sobriety test, the defendant stumbling out of a vehicle and unable to walk without falling over, or the defendant speaking incoherently or in a confused manner.[5] Again, the best evidence showing that a defendant's ability to operate a motor vehicle was visibly impaired would likely be testimony that the defendant's vehicle was observed swerving or moving in some improper fashion, but such evidence is not absolutely required to obtain a conviction for OWVI.

The relevant model jury instruction, M Crim JI 15.4, which was crafted from our Supreme Court's holding in *Lambert*, likewise does not contain the requirement invoked by the circuit court in this case.[6] The instruction provides that a prosecutor must prove beyond a

---

[4] To be clear, the visibility or observation of erratic driving would be very relevant to showing that a defendant's ability to drive was impaired, but it is not an evidentiary requirement. And the observation of erratic, impaired driving would constitute visual evidence of a defendant's conduct or actions.

[5] Of course, the diminished ability to drive must be "due to the consumption of alcoholic liquor, a controlled substance, or other intoxicating substance, or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance[.]" MCL 257.625(3).

[6] MCR 2.512(D)(2) provides:

> Pertinent portions of the instructions approved by the Committee on Model Civil Jury Instructions or the Committee on Model Criminal Jury Instructions or a predecessor committee must be given in each action in which jury instructions are given if
>
> (a) they are applicable,
>
> (b) they accurately state the applicable law, and
>
> (c) they are requested by a party.

reasonable doubt that, due to the consumption of alcohol or an intoxicating substance, "the defendant drove *with less ability* than would an ordinary careful driver." M Crim JI 15.4 (emphasis added). The instruction further provides that "[t]he defendant's driving *ability* must have been lessened to the point that it would have been noticed by another person." *Id.* (emphasis added). Defendant focuses on the preceding sentence, as found in M Crim JI 15.4, claiming that it stands for the proposition that there must be testimony showing that the vehicle was being operated in some type of erratic, impaired manner. Once again, however, under the instruction, and consistent with the statutory language and *Lambert*, it is a defendant's "driving ability" that must be lessened such that it would be noticed, not the actual act of driving itself, although, once again, erratic driving would be evidence of a defendant's lessened ability to drive.

For purposes of OWVI and the instant case, there was evidence that defendant was operating a motor vehicle, that he had consumed alcohol just prior to driving, and that, due to the consumption of alcohol, defendant had glassy, bloodshot eyes and failed sobriety tests, as was visible to and observed by the arresting officer; the jurors also viewed a videotape of the stop and the sobriety tests. The charge of OWVI was thus properly submitted to the jury, despite the fact that there was no evidence showing that defendant's vehicle was being driven in an impaired manner. We acknowledge that the arresting officer conceded to certain errors and misunderstandings regarding the sobriety tests. However, his testimony and the videotape concerning the sobriety tests still presented sufficient evidence to show that defendant was driving with less ability than an ordinary, careful, and prudent driver. *Lambert*, 395 Mich at 305; M Crim JI 15.4.[7] The problematic aspects of the arresting officer's testimony regarding the sobriety tests went to the weight of the evidence and the officer's credibility, which were matters for the jury to assess, not this panel. *Wolfe*, 440 Mich at 514-515. Similarly, the arresting officer's testimony that defendant was operating his vehicle in an appropriate manner did not establish that the evidence was insufficient to prove OWVI. It merely constituted evidence favorable to defendant upon which the jury could place as much or as little weight as it wished. In sum, the circuit court erred by vacating defendant's OWVI conviction on grounds of insufficiency of evidence and instructional error.

The prosecution also argues that the circuit court erred by vacating defendant's conviction on the ground that no evidence established the method and procedure used in conducting defendant's blood test, where the phlebotomist who drew the blood did not testify. Assuming that the circuit court did not err and that the blood-test results should not have been admitted into evidence, defendant cannot establish the requisite prejudice, as any error was harmless. MCL 769.26; MCR 2.613(A); *People v Lukity*, 460 Mich 484, 493-494; 596 NW2d 607 (1999). Given the acquittal on the charge of OWI, which encompassed a UBAL theory, it is evident that the jury did not give any weight to the blood-test results, yet it still convicted defendant of OWVI. Although the prosecution had to establish that defendant had consumed alcohol for purposes of proving OWVI, no specific blood-alcohol level had to be shown, see MCL 257.625(3), and the prosecution presented testimony by the arresting officer that defendant had glassy, bloodshot eyes and smelled of intoxicants and that defendant acknowledged

---

[7] There was also the officer's testimony that defendant had glassy, bloodshot eyes, which would constitute evidence of a visible nature suggesting that defendant's ability to drive was impaired.

consuming two or three beers. We therefore simply cannot conclude that defendant was harmed or prejudiced by the admission of the blood-test evidence, assuming error in its admission.

Reversed and remanded for reinstatement of defendant's conviction of OWVI. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Brock A. Swartzle