PEOPLE v WALTERS

Docket No. 88699. Submitted February 10, 1987, at Grand Rapids. Decided May 19, 1987.

LeRoy Walters was charged with operating a motor vehicle while under the influence of intoxicating liquor (ᴏᴜɪʟ) and, following a jury trial in 57th District Court, Harry A. Beach, J., was convicted of driving while visibly impaired (ᴅᴡɪ). At trial, there was proof that defendant had consumed three beers in the period prior to his arrest and testimony by a state trooper that defendant's eyes were glazed over, he had the odor of alcohol and that he had a slight sway but that the defendant's driving in the thirty or so feet that the officer observed the defendant driving appeared to be normal. Defendant appealed to Allegan Circuit Court, asserting that the district court erred in refusing to grant a directed verdict of acquittal on the basis that the testimony indicating that defendant was observed driving normally precluded his conviction for either ᴏᴜɪʟ or ᴅᴡɪ. The circuit court, George R. Corsiglia, J., affirmed. Defendant appealed to the Court of Appeals on leave granted.

The Court of Appeals *held:*

While the inability to drive normally is an element of the offenses of ᴏᴜɪʟ and ᴅᴡɪ, and evidence that a driver was able to drive normally is exculpatory, evidence of normal driving over a short distance does not preclude conviction of either ᴏᴜɪʟ or ᴅᴡɪ where there was sufficient circumstantial evidence from which to conclude that the driver was operating the motor

REFERENCES

Am Jur 2d, Automobile and Highways §§ 296 *et seq.*

Am Jur 2d, Trial §§ 548-558.

What constitutes driving, operating, or being in control of motor vehicle for purposes of driving while intoxicated statutes. 93 ALR3d 7.

What amounts to violation of drunken-driving statute in officer's "presence" or "view" so as to permit warrantless arrest. 74 ALR3d 1138.

What constitutes driving, being in control of, or operating a motor vehcile within statute making such act, while intoxicated, an offense. 47 ALR2d 570.

vehicle while under the influence of intoxicating liquor. There was barely sufficient circumstantial evidence supporting the OUIL charge and more than adequate evidence supporting the DWI charge.

Affirmed.

1. AUTOMOBILES — INTOXICATING LIQUORS — DRIVING WHILE IMPAIRED — ABILITY TO DRIVE NORMALLY.

Conviction for driving while impaired requires proof that the consumption of an intoxicating liquor or a controlled substance reduced the ability of the driver to drive normally; the use of the word "impaired" connotes a reduction, but not the elimination, of the ability to drive normally (MCL 257.625b; MSA 9.2325[2]).

2. AUTOMOBILES — INTOXICATING LIQUORS — DRIVING WHILE INTOXICATED — ABILITY TO DRIVE NORMALLY.

The inability to drive normally is an element of the offense of operating a motor vehicle while under the influence of intoxicating liquor; evidence that a driver charged with that offense was able to drive normally is exculpatory; however, evidence that the driver was observed driving in a normal manner over a limited distance does not mandate a verdict of acquittal where there is sufficient circumstantial evidence of consumption of alcohol to conclude that the driver was operating the motor vehicle while under the influence of an intoxicating liquor (MCL 157.625; MSA 9.2325).

3. CRIMINAL LAW — DIRECTED VERDICT — ACQUITTAL.

When ruling on a motion for a directed verdict of acquittal, a court must consider the evidence which had been presented by the prosecution up to the time the motion was made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Fred R. Hunter III,* Prosecuting Attorney, and *Michael L. Buck,* Assistant Prosecuting Attorney, for the people.

*Orton, Touman, Hale & McKown, P.C.* (by *Stephen B. McKown*), for defendant on appeal.

Before: R. M. Maher, P.J., and Sawyer and R. L. Tahvonen,* JJ.

Sawyer, J. Defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor (ouil), MCL 257.625; MSA 9.2325. Following a jury trial in district court, defendant was convicted of driving while his ability was visibly impaired (dwi), MCL 257.625b; MSA 9.2325(2). Defendant was sentenced on the conviction to probation and fines and costs or to seventy days in the county jail. Defendant claimed an appeal to the circuit court, which affirmed. Defendant now appeals by leave granted and we affirm.

Defendant's conviction arose out of the events of September 25, 1984. According to defendant, he drank three beers during the late afternoon and early evening of September 25. Sometime after consuming the third beer, his wife, Louise Walters, came to him, very upset because his stepdaughter, Barbara Sorensen, was visiting at a friend's house and the friend's mother, Karen Aldred, would not allow Mrs. Walters to take her daughter home.[1] Defendant and his wife then drove to the Aldred home, although it was only one hundred feet away. However, Aldred would not speak with defendant. According to defendant, he then got back into his truck, with the intention of driving home and summoning the police. Defendant backed out of the driveway and, after traveling a very short distance down the road, saw a state police cruiser turn onto the street. Defendant then stopped his truck and backed into the driveway. The police car

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Apparently, Barbara's father was seeking custody of Barbara and Barbara did not wish to return home with her mother and defendant.

also turned into the driveway, stopping in front of defendant's truck.[2]

Trooper Thomas Spaman testified that he had observed defendant drive approximately thirty feet along the road, stop, back into the driveway he had just left, and then get out of his vehicle. Spaman then drove into the driveway next to defendant's truck, left his cruiser and approached defendant. Spaman testified that he readily formed the opinion that defendant had been drinking heavily. According to Spaman, defendant's eyes were glazed over and there was the odor of alcohol coming from defendant. Defendant also had a slight sway. Spaman stated that he formed the opinion at that point that defendant was a heavy drinker who had been drinking heavily that day, carried his alcohol well, but was drunk on his feet.

Trooper Spaman did not ask defendant to perform any field sobriety tests, as he was more concerned over the domestic situation with respect to Barbara at that point. Spaman told defendant and his wife to stay in the yard and not move the truck and went into the house to talk with Barbara and Aldred. When Spaman returned to the yard approximately five to ten minutes later, the truck was gone, though defendant and his wife were still in the yard. Defendant admitted that he had driven the truck home and walked back to the house.

Trooper Spaman testified that, while he formed the opinion that defendant was drunk, he did not observe anything improper about defendant's driving. Spaman testified that, even prior to entering the house, he had already concluded that defendant had been driving while drunk and that he would arrest defendant on a drunk driving charge.

2 Apparently, Aldred had summoned the police when defendant had started banging on the door.

Spaman did, in fact, ultimately arrest defendant for OUIL.

Defendant first argues that he could not be convicted for either OUIL or DWI where the trooper observed defendant operating his motor vehicle normally. That is, we are asked to resolve the question whether a person can be convicted of OUIL or DWI where he is observed operating a motor vehicle in a normal fashion. We conclude that such evidence, while relevant, does not prevent a conviction for either offense.

We begin our analysis by first considering what elements the prosecution must establish in order to obtain a conviction under these statutes. The OUIL statute, MCL 157.625; MSA 9.2325, provides in relevant part as follows:

> (1) A person, whether licensed or not, who is under the influence of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance, shall not operate a vehicle upon a highway or other place open to the general public, including an area designated for the parking of vehicles, within the state.

Cases interpreting this statute have also required a showing that "defendant's ability to drive was substantially and materially affected by consumption of intoxicating liquor." *People v Lambert,* 395 Mich 296, 305; 235 NW2d 338 (1975); see also *People v Solak,* 146 Mich App 659, 666; 382 NW2d 495 (1985). This test has also been stated as being one of whether "the person is substantially deprived of [his/her] normal control or clarity of mind at the time [he/she] is operating the motor vehicle." CJI 15:1:01(8); see also *People v Raisanen,* 114 Mich App 840, 844; 319 NW2d 693 (1982).

As for DWI, MCL 257.625b; MSA 9.2325(2) provides in pertinent part as follows:

> (1) A person shall not operate a vehicle upon a highway or other place open to the general public, including an area designated for the parking of vehicles, within the state when, due to the consumption of an intoxicating liquor, a controlled substance, or a combination of an intoxicating liquor and a controlled substance, the person has visibly impaired his or her ability to operate the vehicle.

CJI 15:2:01(5) instructs the jury that the defendant's ability must be so weakened or reduced by the consumption of alcohol "that he operated the vehicle with less ability than would an ordinary, careful and prudent driver." However, while it is necessary that the defendant have actually operated the motor vehicle, it is not necessary that his actual operation be observed. *People v Pomeroy (On Rehearing),* 419 Mich 441; 355 NW2d 98 (1984).

Turning first to the consideration of whether defendant's normal driving was inconsistent with a conviction for DWI, we conclude that it is not. First, we note that the DWI statute addresses the problem of the driver whose ability has been impaired, not eliminated. Indeed, looking at the jury instructions for DWI, CJI 15:2:01(5) provides that a defendant's ability to operate a motor vehicle must be weakened or reduced by the consumption of alcohol so that the defendant operated the vehicle "with less ability than would an ordinary, careful and prudent driver." We do not believe that a person's actual performance in driving thirty feet and backing into a driveway in a perfectly normal manner is inconsistent with a factual finding that his ability to drive has been impaired. Indeed, the

use of the word "impaired," rather than the use of a word such as "eliminated," suggests that some ability to drive in a normal manner will remain. Thus, all that is necessary for a conviction under the DWI statute is a reduction, not an elimination, of the ability to drive normally.

Turning to the OUIL statute, defendant's claims become somewhat more substantial. The OUIL statute does not directly define what "under the influence" means. CJI 15:1:01(6) instructs the jury that "under the influence" means that "the defendant's ordinary judgment, common sense, mental state or physical coordination is significantly or substantially affected." The instruction goes on to state that the person is under the influence when he or she "has consumed alcoholic beverages to such an extent that [his/her] brain, nervous system or muscles are affected, [his/her] ability to operate a motor vehicle is significantly diminished or decreased and [he/she] *is no longer able to operate the motor vehicle in a normal manner.*" (Emphasis added.)

In light of the above-discussed case law and the above jury instruction, we conclude that the inability to drive normally is an element of the offense of OUIL and that evidence of the defendant's being able to drive normally is exculpatory. However, we cannot conclude that any evidence of normal driving, no matter how limited, mandates a verdict of acquittal. That is, where there is sufficient circumstantial evidence that, due to the consumption of alcohol, a defendant could not drive normally and there is also observational evidence that defendant drove normally for a limited distance, it is possible to conclude that the defendant was operating under the influence of an intoxicating liquor. However, the evidence of his ability to drive normally is relevant.

This perhaps is best illustrated by way of an example. If an officer observes a driver driving in a normal fashion over a significant distance, observes the driver negotiate various driving maneuvers in a normal manner, but thereafter sees the driver get out of his vehicle and he appears to be in a drunken state, there is doubt as to whether a rational trier of fact could convict the defendant of OUIL and, therefore, a directed verdict may be appropriate. However, as the old saying goes: "Even a blind pig can occasionally find an acorn." Similarly, even a drunk driver can negotiate a short distance in a normal manner. Thus, while defendant is correct to the extent that he urges that the ability to drive normally precludes a conviction for OUIL, it does not necessarily follow that any evidence of actual normal driving performance, no matter how limited, establishes the ability to drive normally with such certainty that the issue may be withdrawn from the jury.

To summarize, we today hold that, in order to obtain a conviction for OUIL, the prosecution must present evidence that the defendant is unable to drive normally. That evidence may be by either direct observation or by circumstantial evidence. While evidence that the defendant did, in fact, drive normally is relevant and should be considered by the trial court in determining whether an OUIL charge should be presented to the jury, the amount of driving observed must be sufficient in order to make a proper determination of whether the defendant could drive normally. Similarly, under the DWI statute, normal driving is not necessarily inconsistent with the factual conclusion that a driver's ability was impaired.

We now turn to the question of whether the trial court should have granted defendant's motion for directed verdict on the OUIL charge at the

conclusion of plaintiff's proofs. The standard for reviewing a defense motion for a directed verdict based upon insufficiency of the evidence was set forth in *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979):

> In summary, the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, *Garcia, supra* [*People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976)], view that evidence in a light most favorable to the prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt, *Jackson, supra* [*Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 560 (1979)], p 319.

In the case at bar, there was some circumstantial evidence that defendant was under the influence of intoxicating liquor. Looking at the evidence in the light most favorable to the prosecution, Trooper Spaman testified that, based on his experience, he readily formed the opinion that defendant had been drinking heavily and "was drunk on his feet." Spaman also testified defendant had a strong odor of alcohol, that his eyes were glazed over and that defendant swayed. Defendant was also visibly angry and upset. Defendant also avoided Spaman's request to do a field sobriety test by changing the subject to the domestic situation. Furthermore, Barbara testified that defendant had a slight sway or stagger and that his eyes were bloodshot. According to Barbara, defendant's eyes were bloodshot when he was

drunk. Finally, defendant admitted to drinking at least four or five beers.

While the fact that defendant was able to drive normally for thirty feet and to back up his pickup is not dispositive on the issue whether he was driving under the influence, and, in fact, we would have no difficulty in affirming the denial of the directed verdict had there been a sufficient amount of circumstantial evidence presented to the jury during the prosecution's case in chief that defendant was under the influence, this case presents a very close question. The body of circumstantial evidence in the case at bar is, to say the least, underwhelming. It would be much easier to affirm this case had there been evidence of defendant's failing a chemical or dexterity test. While we are not convinced that, had we sat as the trier of fact, we would have convicted defendant of OUIL, that is not the test to be applied. Rather, we must look to whether a rational trier of fact could find the crime proven beyond a reasonable doubt. *Hampton, supra.*

We believe that the circumstantial evidence in this case was barely sufficient to survive the directed verdict motion. In fact, this case probably represents the low-water mark in the amount of evidence necessary to allow the submission of an OUIL charge to a jury. We do point out, however, that we have no difficulty in the submission of the DWI charge to the jury. The circumstantial evidence was clearly strong enough to allow the jury to consider a DWI charge.

For the same reasons that the trial court correctly denied the motion for directed verdict, the trial court also correctly denied the motion for judgment notwithstanding the verdict.

Affirmed.