PEOPLE v CALVIN

Docket No. 178002. Submitted December 6, 1995, at Detroit. Decided April 26, 1996, at 9:10 A.M. Leave to appeal sought.

Donald R. Calvin was convicted by a jury in the 18th District Court, C. Charles Bokos, J., of driving a motor vehicle while visibly impaired. He appealed, and the Wayne Circuit Court, John H. Hausner, J., reversed the conviction, finding that the permissive inference of innocence of the accused in CJI2d 15.5 is inconsistent with MCL 257.625a(9)(a); MSA 9.2325(1)(9)(A), which the circuit court interpreted as embodying a mandatory or conclusive presumption of innocence where chemical analysis of the defendant's blood, breath, or urine indicates a blood alcohol content of 0.07 percent or less. The prosecutor appealed by leave granted.

The Court of Appeals *held:*

1. MCL 257.625a(9)(a); MSA 9.2325(1)(9)(a) embodies a permissive or rebuttable presumption that a defendant's ability to operate a motor vehicle is not impaired where chemical analysis of the defendant's blood, breath, or urine indicates a blood alcohol content of 0.07 percent or less. The Legislature clearly contemplated that a person whose blood alcohol content was 0.07 percent or less could still be visibly impaired.

2. CJI2d 15.5 is consistent with MCL 257.625a(9)(a); MSA 9.2325(1)(9)(a). The circuit court's order must be reversed, and the matter must be remanded to the circuit court for entry of an order reinstating the defendant's conviction.

Reversed and remanded.

AUTOMOBILES — INTOXICATING LIQUORS — DRIVING WHILE VISIBLY IMPAIRED — STATUTORY PRESUMPTIONS — JURY INSTRUCTIONS.

The presumptions against the accused contained in subsections 625a(9)(b) and (c) of the Michigan Vehicle Code must be construed as permissive or rebuttable; the presumption in favor of the accused in subsection 625a(9)(a) also must be construed as permissive or rebuttable, rather than as a conclusive presumption of innocence, because it is not an essential element of the offense of driving while impaired that a person's blood alcohol content exceed 0.07 percent; CJI2d 15.5 is consistent with the Legislature's intent in

enacting the statutory presumptions in subsection 625a(9) (MCL 257.625a[9][a], [b], [c]; MSA 9.2325[1][9][a], [b], [c]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training, and Appeals, for the people.

*Talpos & Arnold, P.C.* (by *John C. Talpos*), for the defendant.

Before: WHITE, P.J., and HOLBROOK, JR., and P. D. SCHAEFER,* JJ.

PER CURIAM. Defendant was convicted by a district court jury of driving a motor vehicle while visibly impaired, MCL 257.625(3); MSA 9.2325(3). The circuit court reversed the conviction, and the prosecutor's delayed application for leave to appeal was granted by this Court. We reverse.

I

On July 29, 1993, at 11:01 P.M., defendant was stopped for speeding by Deputy David DesAutels of the Wayne County Sheriff's Department. When DesAutels approached defendant's car, he noticed that defendant's face was red and he detected a strong odor of alcohol on defendant's breath. DesAutels asked defendant if he had been drinking, and defendant replied that he had drunk four beers after playing golf. DesAutels asked defendant to step to the rear of the car and perform sobriety tests. As defendant walked to the rear of the car, DesAutels noticed defendant placing his hand on the side of the car for support. After defendant failed in part certain

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sobriety tests, DesAutels arrested defendant on suspicion that he had been operating a motor vehicle while under the influence of alcohol.

At the Garden City police station, an initial Breathalyzer test was performed on defendant at 11:59 P.M., which indicated a blood alcohol content (BAC) of 0.09 percent. A second test was performed twelve minutes later, which indicated the same percentage.

Defendant was charged with the misdemeanor offense of driving a motor vehicle while visibly impaired, MCL 257.625(3); MSA 9.2325(3). At trial, defendant testified that he drank approximately seven scotch and water drinks between 3:00 and 11:00 P.M. during his round of golf and dinner at a local restaurant. He did not think his driving ability was impaired when he left the restaurant for home just before 11:00 P.M.

David Schneider, an expert witness in the field of pharmacology, testified on behalf of the defense. When presented with a hypothetical question based on the facts of this case, he opined that, at the time of the Breathalyzer test, defendant's actual BAC would have been less than 0.07 percent, probably ".05 [percent] or thereabouts." Schneider further opined that, based on defendant's testimony regarding the amount and timing of his alcohol consumption and a normal absorption rate, defendant's BAC at 11:00 P.M., when he was driving, would have been less than it was one hour later when the first Breathalyzer was administered. In Schneider's opinion, defendant's BAC would have peaked just after midnight.

Over defense counsel's objection, the district court judge instructed the jury, consistent with CJI2d 15.5, as follows:

> One way to determine when a person is intoxicated is to measure how much alcohol [is] in his blood. There was evidence in this trial that a [B]reathalyzer test was given to the Defendant. The purpose of this test is to measure the amount of alcohol in a person's blood. If you find that there was .07 [percent] or less of alcohol in the Defendant's blood when he operated the vehicle, the law allows you to infer that the Defendant was not under—was not impaired at that time.
>
> This means that you may find from his blood alcohol level, that the Defendant did not violate the motor vehicle code, but you are not required to do so. Let me repeat that. If you find that there was .07 [percent] or less of alcohol in the Defendant's blood when he operated the vehicle, the law allows you to infer that the Defendant was not impaired at that time. This means that you may find, from his blood alcohol level, that the Defendant did not violate the motor vehicle code, but you are not required to do so.
>
> If you find that there was more than .07 percent but less than .10 percent of alcohol in the Defendant's blood when he operated the vehicle, the law allows you to infer that the Defendant's ability to operate a motor vehicle was impaired. This means that you may find from this blood alcohol level, that the Defendant's ability to operate was impaired, but you are not required to do so.

Defendant was convicted as charged. He appealed as of right to the circuit court, which reversed defendant's conviction, finding that the permissive inference in CJI2d 15.5 was inconsistent with MCL 257.625a(9)(a); MSA 9.2325(1)(9)(a), which the circuit court interpreted as embodying a mandatory or conclusive presumption of innocence where chemical analysis of the defendant's blood, breath, or urine

indicates a blood alcohol content of 0.07 percent or less. The prosecutor appealed to this Court by leave granted.

II

A

At the time of defendant's trial in January 1994, the offense of driving while impaired (DWI) was statutorily defined, in pertinent part, as follows:

A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles within this state when, due to the consumption of an intoxicating liquor, . . . the person's ability to operate the vehicle is visibly impaired. [MCL 257.625(3); MSA 9.2325(3).]

Unlike subsection 625(1)(b), which makes driving with a BAC of 0.10 percent or more a criminal offense per se, the offense of DWI is committed when a person drives a vehicle while the person's ability to drive is "visibly impaired."

According to our Supreme Court, visible impairment is shown when the

"defendant's ability to drive was so weakened or reduced by consumption of intoxicating liquor that defendant drove with less ability than would an ordinary, careful and prudent driver. Such weakening or reduction of ability to drive must be visible to an ordinary, observant person." [*People v Lambert*, 395 Mich 296, 305; 235 NW2d 338 (1975).]

See also CJI2d 15.4; *People v Walters*, 160 Mich App 396, 401; 407 NW2d 662 (1987). The degree of a person's intoxication may be established by chemical analysis tests of the person's blood, breath, or urine

or by testimony of someone who observed the impaired driving. *Lambert, supra* at 305.

The Legislature has determined that, when properly conducted, chemical tests for BAC are a generally reliable indicator of the degree of intoxication, and that their results are admissible at trial, along with other competent evidence of the defendant's guilt or innocence. See MCL 257.625a(6)(a) and (7); MSA 9.2325(1)(6)(a) and (7). At issue in this case are certain statutory presumptions that arise from properly admitted chemical analysis evidence. At the time of defendant's trial, subsection 625a(9) of the Michigan Vehicle Code provided:

> Except in a prosecution relating solely to a violation of section 625(1)(b) [operating a motor vehicle with an unlawful blood alcohol content], the amount of alcohol in the driver's blood at the time alleged as shown by chemical analysis of the person's blood, urine, or breath gives rise to the following presumptions:
>
> (a) If there was at the time 0.07% or less by weight of alcohol in the defendant's blood, it is presumed that the defendant's ability to operate a motor vehicle was not impaired due to the consumption of intoxicating liquor, and that the defendant was not under the influence of intoxicating liquor.
>
> (b) If there was at the time in excess of 0.07% but less than 0.10% by weight of alcohol in the defendant's blood, it is presumed that the defendant's ability to operate a vehicle was impaired within the provisions of section 625(3) due to the consumption of intoxicating liquor.
>
> (c) If there was at the time 0.10% or more by weight of alcohol in the defendant's blood, it is presumed that the defendant was under the influence of intoxicating liquor. [MCL 257.625a(9); MSA 9.2325(1)(9).]

The presumptions *against* the accused in subsections 625a(9)(b) and (c) must be construed as permis-

sive or rebuttable to ensure that the burden of proving all elements of the offense beyond a reasonable doubt remains on the prosecution. MRE 302(b). Similarly, the presumption *in favor of* the accused in subsection 625a(9)(a) must be construed as permissive, rather than as a conclusive presumption of innocence, because it is not an essential element of the offense of DWI that a person's BAC exceed 0.07 percent.[1] See, e.g., *People v Lawrence*, 53 AD2d 705; 384 NYS2d 37 (1976). Hence, the validity of a presumption that arises from chemical analysis testing is within the province of the trier of fact to weigh, not in the abstract, but, rather, in connection with all the evidence in the case, and thereafter to accept or reject it. See, generally, McCormick, Evidence (3d ed), § 347, pp 991-997. The Legislature clearly contemplated that a person whose BAC was 0.07 percent or less could still be visibly impaired.

Accordingly, we conclude that MCL 257.625a(9)(a); MSA 9.2325(1)(9)(a) embodies a permissive or rebuttable presumption that a defendant's ability to operate

---

[1] In discussing the admissibility of chemical analysis evidence, a well-known treatise stated:

In the context of traffic offenses, . . . specialized statutes and regulations have largely supplanted the application of the common law principles and evidence codes in determining the admissibility of blood and breath test evidence. The Uniform Vehicle Code illustrates some common provisions. In proceedings involving driving or control of a vehicle while under the influence of intoxicating liquor, it makes chemical test evidence of BAC admissible as long as it is obtained by certified persons following [prescribed] procedures . . . . The results of this testing can trigger two *rebuttable* presumptions: if BAC at the relevant time was .10% or more, that the individual was under the influence; and if BAC was .05% or less, that he was not. An intermediate reading is deemed "competent evidence" for consideration along with the other evidence in the case. [McCormick, Evidence (3d ed), § 205, p 617 (emphasis added).]

a motor vehicle is not impaired where chemical analysis of the person's blood, breath, or urine indicates a BAC of 0.07 percent or less.

B

The prosecutor concomitantly argues that, contrary to the circuit court's ruling, CJI2d 15.5 is consistent with MCL 257.625a(9)(a); MSA 9.2325(1)(9)(a). We agree.

In this case, the district court had instructed the jury, in accordance with CJI2d 15.5, to consider all evidence about the condition of defendant at the time he was operating the motor vehicle, including the results of a Breathalyzer test. The jurors were further instructed to consider whether the Breathalyzer tests were technically accurate and reliable, and to give the test results whatever weight they deserved. In particular, CJI2d 15.5(5) was given, which instructed the jurors that they may find from a blood alcohol level of 0.07 percent or less that "the defendant did not violate the motor vehicle code, but you are not required to do so."

The circuit court held that CJI2d 15.5(5) was inconsistent with subsection 625a(9)(a) because the instruction impermissibly permitted the jury to disregard the mandatory presumption of innocence created by the statute. On the basis of our conclusion above that the statutory presumptions in subsection 625a(9) are permissive or rebuttable, we find that CJI2d 15.5 in general, and CJI2d 15.5(5) in particular, are consistent for the most part with the Legislature's

intent in enacting the statute.[2] Accordingly, we reverse the circuit court's order reversing defendant's conviction.

Reversed and remanded for reinstatement of defendant's conviction.

---

[2] Although we have concluded that CJI2d 15.5 is consistent with subsection 625a(9)(a), we expressly decline to place our imprimatur on the language of the jury instruction. In our opinion, any confusion in the application of CJI2d 15.5 arises from the ordering of the paragraphs and from the language of ¶¶ 5 through 8 that instruct the jury that "[i]f you find that there was [a certain] percent." We believe this language detracts from the underlying premise, which has been adopted by the Legislature in its enactment of § 625a, that properly conducted chemical tests for BAC are entitled to a rebuttable presumption of accuracy.