# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

BRANDON JOHN MITCHELL,

        Defendant-Appellee.

UNPUBLISHED
November 4, 2014

No. 311147
Livingston Circuit Court
LC No. 12-020453-AR

Before: METER, P.J., and WHITBECK and RIORDAN, JJ.

PER CURIAM.

A district-court jury convicted defendant of operating a vehicle while visibly impaired (OWVI), MCL 257.625(3), as a lesser included offense of operating a vehicle while intoxicated (OWI), MCL 257.625(1). The case has been the subject of numerous motions in both the district court and the circuit court. It is now before us on remand from the Michigan Supreme Court, limited to a specific issue as discussed herein. After considering the issue, we remand to the circuit court for further proceedings.

Underlying this prosecution is a traffic accident that occurred in the early hours of May 2, 2009. A witness observed defendant having trouble keeping his vehicle in his lane of traffic. Eventually the vehicle went off the road and into a ditch. The witness telephoned 911, but defendant drove his vehicle out of the ditch and away from the scene. The witness followed in a vehicle driven by her son; she testified that she observed something underneath defendant's vehicle hitting the pavement and causing sparks. Officers from the Livingston County Sheriff's Department arrived and pulled over defendant. At the request of the officers, defendant exited the vehicle. The police administered a field-sobriety test. Defendant did not perform satisfactorily on a "horizontal gaze nystagmus" test, and he displayed trouble walking and turning and maintaining his balance on one foot. The police arrested defendant and he was charged with OWI.

At the jail, officers used the DataMaster breathalyzer to twice test defendant's blood-alcohol level. The results were admitted as exhibits at trial and showed .07 grams of alcohol per 210 liters of breath for the first test and .08 grams of alcohol per 210 liters of breath for the second test. Felix Adatsi, a toxicologist with the Department of State Police, was qualified as an expert witness in "the field of toxicology and the operation of the [DataMaster]." Adatsi testified that based on defendant's height and weight, if his report of what he drank that evening was

-1-

accurate, his blood-alcohol content should have been approximately .027 around the time he was stopped and arrested.

Before trial in the district court, the prosecutor moved to exclude defendant's witnesses and exhibits for failure to comply with a discovery order. The trial court granted the motion, and defendant was not permitted to offer any exhibits or witnesses other than himself. After the jury found him guilty of OWVI, defendant moved for a new trial. He argued that the trial court's order excluding his witnesses and exhibits was contrary to law and deprived him of his constitutional right to present a defense. The trial court stated that it believed its order was erroneous based on the law concerning discovery and it therefore granted defendant's motion. The prosecutor applied for leave to appeal in the circuit court, and the circuit court granted the application. The circuit court determined that the district court did not have the authority to enter the discovery order and "was right to recognize its error and order a new trial." The court also concluded that the error deprived defendant of his constitutional right to present a defense. However, the court remanded the case to the district court to consider whether the prosecutor could prove that the error was harmless beyond a reasonable doubt.

On remand in the district court, the parties declined to hold an evidentiary hearing. Defense counsel argued that its proffered expert, Dr. Karl[1] Ebner, would have attacked the reliability of the DataMaster results. The district court had access to and examined a report authored by Dr. Ebner. Defense counsel argued that he would have also called defendant's girlfriend, who would have "testified as to the amount of alcohol that in fact she observed the Defendant consume." The district court found that even if defendant had presented his proposed witnesses, the testimony would not have "changed the outcome of the trial," specifically finding that the exclusion of the testimony was harmless error.

Defendant appealed to the circuit court, which also concluded that his proffered witnesses would not have altered the outcome of the trial because defendant was convicted of OWVI, not OWI. The court explained that the jury

> must've dismissed the breathalyzer test because they didn't find him guilty of having—of a per se violation. But I think the jury listened to the evidence as far as the testimony that the gentleman admitted that he had three beers and a glass of wine and drove an automobile inside of two and a half hours of driving, and that could very well have permitted a rational jury to have found him guilty of operating while visibly intoxicated.

The circuit court affirmed the district court.

At a later hearing, however, the circuit court explained that it had set its previous decision aside and wanted to hear further argument. Following argument, the court reversed its previous decision, explaining:

---

[1] At times in the lower court record, Ebner's name is spelled "Carl," but defendant uses the spelling "Karl" in his appellate brief.

I do find when I look back on this on deep thought and after I heard the argument at the end of May, I initially thought it was harmless error, the more I thought about it and it just took me a few hours after more thought to think I couldn't let that decision stand. And I'll tell you why. It is clear to me that in the Declaration of Independence from about seven generations we had to suffer under England not letting us have jury trials and then for about the last 235 years on earth, that'd be about maybe nine generations, we've had the right to a jury trial. And then the Sixth Amendment permits counsel and a public trial and a jury trial. And I simply couldn't stand to see that Defendant in this case at bar be deprived the right of a jury trial with the right to counsel, right to present witnesses and right to go forward and have his witnesses come forward.

The court further explained, "[T]o let the People's evidence go unchallenged is what really makes it harmful error and not harmless error." The court also found that the error was not harmless given the particular circumstances of the case:

I also recognize that there's a [timeframe] from last alcohol to when the gentleman got stopped. There may be reasons why he drove as he did. I didn't know about this falling asleep thought up 'til now, but who knows it could've been that. But more importantly, it put a [mindset]—that testimony could put a [mindset] in the juror's mind with the Plaintiff with the Prosecutor's line of thinking that would be hard to overcome by the defense that it is harmful error not to let him put evidence in to rebut Adatsi's testimony and the officer's testimony and everybody else's testimony that came forth out of the Prosecutor's case. It would seem to be just a travesty of justice not to let the defense put a case in. Whether or not this man was impaired or not, I have no clue. And when I first analyzed this as harmless error I thought, well, they didn't find the guy guilty of drunk driving and that's what Adatsi was on for. But I'm thinking on second thought that the cumulative effect of Dr. Adatsi's expert testimony on behalf of the People coupled with the police's error—or testimony and then not being able to rebut that because of not being able to present witnesses would give the People an unfair advantage and it would create harm to the Defendant because the jury for better or for worse doesn't have the opportunity to have the People's evidence rebutted by witnesses brought forward by the Defendant, and that would—that is harmful.

* * *

I do make a finding that the error was not harmless beyond a reasonable doubt . . . .

The court accordingly remanded the case for a new trial.

The prosecutor applied for leave to appeal in this Court, but the Court denied the application. *People v Mitchell*, unpublished order of the Court of Appeals, entered October 2, 2013 (Docket No. 311147). The prosecutor then applied for leave to appeal in the Supreme Court, which, in lieu of granting leave, remanded this case to this Court to consider "whether the

Livingston Circuit Court erred in concluding that the district court's exclusion of the defense expert testimony was not harmless beyond a reasonable doubt with respect to the defendant's conviction for operating a motor vehicle while visibly impaired, MCL 257.625(3)." *People v Mitchell*, 495 Mich 1001; 846 NW2d 54 (2014). We will not consider the exclusion of defendant's girlfriend's testimony, because the Supreme Court directed this Court to consider only the exclusion of Ebner's testimony.

On appeal, the parties dispute whether the exclusion of the testimony in question was an error of constitutional dimensions. A criminal defendant has a constitutional "right to present a defense, which includes the right to call witnesses." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). However, the erroneous exclusion of a defense witness does not automatically amount to a constitutional violation. *People v Steele*, 283 Mich App 472, 488-489; 769 NW2d 256 (2009).

Defendant was convicted of OWVI under MCL 257.625(3). That section provides, in pertinent part:

> A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of alcoholic liquor, . . . the person's ability to operate the vehicle is visibly impaired.

Visible impairment is established when the "'defendant's ability to drive was so weakened or reduced by consumption of intoxicating liquor that defendant drove with less ability than would an ordinary, careful and prudent driver. Such weakening or reduction of ability to drive must be visible to an ordinary, observant person.'" *People v Calvin*, 216 Mich App 403, 407; 548 NW2d 720 (1996), quoting *People v Lambert*, 395 Mich 296, 305; 235 NW2d 338 (1975).

It is unclear whether the exclusion of Ebner's testimony violated defendant's constitutional right to present a defense because it is unclear what Ebner's testimony would have been. Aside from assertions by counsel and vague statements made by the district court, there is nothing in the record to indicate what his testimony would have been. No evidentiary hearing was held and Ebner's report is not contained in the lower court record. Defendant asserts that his expert witness could have undermined the administration and reliability of the DataMaster test, "could have explained the significance of sleep deprivation," and could have "opined about the amount of alcohol the Defendant consumed and whether that would have affected his ability to operate a motor vehicle." Although defendant was able to challenge the reliability of the DataMaster test through his cross-examination of Adatsi, this testing of the evidence may not have been as effective as having an expert witness directly challenge the test results and Adatsi's testimony. Further, testimony by Ebner regarding sleep deprivation could, conceivably, have cast doubt on whether defendant was visibly impaired under the proper legal standard. Consequently, it is possible that Ebner would have provided a defense to the OWVI charge that was not otherwise available through cross-examination of prosecution witnesses. See *Steele*, 283 Mich App at 489 (discussing whether the exclusion of testimony was an unconstitutional deprivation of the right to present a defense or merely an evidentiary error).

However, that determination cannot be made without knowing what Ebner's otherwise admissible[2] testimony would have been. If the exclusion deprived defendant of his constitutional right to present a defense, the prosecution, to sustain the conviction, must establish beyond a reasonable doubt that the error was harmless. *People v Anderson (After Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994). If the exclusion was a mere evidentiary error that did not rise to the level of a constitutional violation, defendant is not entitled to a new trial unless he can establish that it is "more probable than not that the error in question undermined the reliability of the verdict, thereby making the error outcome determinative." *People v Blackmon*, 280 Mich App 253, 259, 270; 761 NW2d 172 (2008) (internal quotation marks, alteration, and citation omitted). The record before us is not sufficient to answer the pertinent questions, and they are issues that should be addressed in the first instance by the lower court. We note that while the circuit court did come to the conclusion that defendant had been deprived of his constitutional right to present a defense, neither the circuit court nor the district court properly analyzed the content and admissibility[3] of the proposed testimony in order to determine the proper standard for evaluating the impact of the exclusion of the testimony.[4] See, generally, *Steele*, 283 Mich App at 489.

In addressing the question framed by the Supreme Court—"whether the Livingston Circuit Court erred in concluding that the district court's exclusion of the defense expert testimony was not harmless beyond a reasonable doubt"—we conclude that the circuit court missed key aspects of the harmless error analysis and we therefore remand this case to the circuit court for further proceedings in accordance with this opinion.

Remanded for further proceedings. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ William C. Whitbeck
/s/ Michael J. Riordan

---

[2] The prosecution argues on appeal that some of the proposed testimony would not have been admissible even aside from anything related to the discovery order.

[3] See footnote 2, *supra*.

[4] The circuit court simply made a blanket conclusion that defendant had been deprived of his constitutional right to present a defense because "the lower court lacked authority to order discovery . . . [and] erroneously precluded the defendant from presenting any testimony on his behalf . . . ."