# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANIEL WEBSTER WOOD,

Defendant-Appellant.

UNPUBLISHED
April 24, 2018

No. 335131
Washtenaw Circuit Court
LC No. 15-000154-FH

Before: MURPHY, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of operating a motor vehicle while intoxicated (OWI), third offense, MCL 257.625(1) and (9). We affirm.

On January 4, 2015, defendant consumed alcohol at a restaurant and at a friend's apartment while watching a football game on television. Defendant admitted that he consumed three beers and three shots of vodka during the course of the evening and admitted that he got into his SUV and attempted to drive home after consuming the alcohol. The police found defendant sleeping or unconscious, slumped over the steering wheel of his vehicle while it was parked in the parking lot of a supermarket one mile from his friend's apartment. The engine was running, and defendant's foot was on the brake. Defendant admitted to the arresting officer that he had driven the vehicle from his friend's apartment to the supermarket. The evidence, while not entirely clear, indicated that approximately two hours elapsed from the time that defendant drove and parked at the supermarket and the time that he was discovered by police.[1] The police administered field sobriety tests and arrested defendant for OWI. At the police station, defendant took two DataMaster tests and his bodily alcohol content was 0.13%.

At trial, defendant admitted that he was intoxicated when the arresting officer found him in his parked SUV. However, defendant interposed a rising-alcohol-content defense, arguing that his bodily alcohol content was less than 0.08% at the time he drove the vehicle and that he did not operate the SUV under the influence of alcohol because his ability to drive was not

---

[1] Defendant testified that he sat in his parked SUV for about an hour listening to the radio and then he fell asleep.

-1-

substantially and materially impaired at that point. Defendant argued that he drove the vehicle at approximately 9:00 p.m. and that he pulled off the road and parked the SUV when he began to feel the impact of the alcohol on his system. Defendant contended that his bodily alcohol level rose as his body metabolized the alcohol over the next few hours, resulting in a DataMaster test result of 0.13% three hours later, shortly after midnight. Defendant maintained that he did not operate the motor vehicle after the point in time when his bodily alcohol content exceeded legal limits. The jury found defendant guilty of OWI. MCL 257.625(1). Defendant appeals as of right.

MCL 257.625 provides, in pertinent part, as follows:

(1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. As used in this section, "operating while intoxicated" [OWI] means any of the following:

(a) The person is under the influence of alcoholic liquor, a controlled substance, or other intoxicating substance or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance [OUIL].

(b) The person has an alcohol content of 0.08 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine [UBAL] .
. . .

As gleaned from the statutory language, OWI can be established pursuant to either an OUIL theory of criminal liability or a UBAL theory.[2] Defendant argues that the evidence was insufficient to sustain his conviction of OWI under a UBAL theory, considering that the ticket from the DataMaster did not contain the measurement of alcohol in defendant's breath and that the only prosecution witness did not offer testimony showing the units of measurement of alcohol the DataMaster used. Defendant additionally contends that the evidence was insufficient to sustain his conviction of OWI under an OUIL theory, given that the arresting officer never observed any impaired or intoxicated driving and did not offer any testimony that he knew defendant had operated the vehicle while under the influence.

---

[2] We note that M Crim JI 15.6(2)(f) effectively provides that a jury need not be unanimous on which of these two theories apply, so long as all of the jurors agree that a defendant committed OWI under at least one of the theories. See also Use Note 2 to M Crim JI 15.6, citing *People v Nicolaides*, 148 Mich App 100; 383 NW2d 620 (1985). "When a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory." *People v Johnson*, 187 Mich App 621, 629-630; 468 NW2d 307 (1991). Ultimately, even if six jurors found that UBAL alone was proven and the other six jurors found that only OUIL was proven, you would still have a unanimous jury finding that the crime of OWI had been committed premised on a single act of driving a motor vehicle.

At the outset, we address defendant's argument that it is impossible to know whether defendant was convicted of OWI under an OUIL or a UBAL theory, because the verdict form did not specify whether the jury found him guilty under an OUIL or a UBAL theory. Thus, according to defendant, his OWI conviction can only be affirmed if there was sufficient evidence to support the OUIL theory *and* the UBAL theory.

The verdict form indicated that the jury found defendant guilty of "Operating Under the Influence/Unlawful Blood Alcohol Level." Thus, it is impossible to tell from the verdict form which theory or theories of OWI the jury based its verdict upon. Further, when the jury foreman read the verdict, he stated, "We, the jury, find the Defendant ah – guilty operating under the influence, unlawful blood alcohol level." The foreman was obviously reading from the verdict form, so the transcript does not provide any further insight. Therefore, we agree with defendant that the panel is presented with a situation wherein we cannot discern whether the jury convicted defendant of OWI on an OUIL theory or a UBAL theory, or a combination thereof. We disagree, however, with defendant's position that this conundrum requires a determination that both theories were sufficiently supported by the evidence; the law is just the opposite, considering that defendant is arguing factual insufficiency and not legal insufficiency.

In *People v Chelmicki*, 305 Mich App 58, 64-65; 850 NW2d 612 (2014), the defendant was convicted, in general, of unlawful imprisonment, MCL 750.349b, which allows for a conviction when, as pertinent to the charges in *Chelmicki*, a defendant knowingly restrains another person *either* by means of a weapon or dangerous instrument *or* in order to facilitate the commission of another felony. The defendant argued that there was insufficient evidence with respect to both circumstances or theories, but the *Chelmicki* panel declined to address whether there was sufficient evidence of restraint by means of a weapon or dangerous instrument, because there was sufficient evidence of restraint to facilitate the commission of another felony, arson. *Chelmicki*, 305 Mich App at 65. In a footnote, this Court explained why it was unnecessary to reach both theories of the unlawful-imprisonment conviction, either of which could have served to support the conviction:

> If there was any deficiency regarding the sufficiency of the evidence of restraint by means of a weapon or dangerous instrument under subsection (1)(a), it was evidentiary in nature and went to the issue of whether restraint was actually accomplished through use of the BB gun, when the victim testified that she knew the BB gun was broken, unloaded, and could not hurt her, and physical force was used to restrain the victim. Accordingly, we find that our ruling does not offend *Griffin v United States*, 502 US 46; 112 S Ct 466; 116 L Ed 2d 371 (1991) (discussing due process concerns in the context of a general verdict with alternative bases of criminal liability and the sufficiency thereof). [*Chelmicki*, 305 Mich App at 65 n 1.]

A concise and accurate statement of the principles that were expressed in the United States Supreme Court's decision in *Griffin* was set forth in *United States v Garcia*, 992 F2d 409, 416 (CA 2, 1993), wherein the Second Circuit of the United States Court of Appeals observed:

> [T]he teaching of *Griffin* is that when disjunctive theories are submitted to the jury and the jury renders a general verdict of guilty, appeals based on

evidentiary deficiencies must be treated differently than those based on legal deficiencies. If the challenge is evidentiary, as long as there was sufficient evidence to support one of the theories presented, then the verdict should be affirmed. However, if the challenge is legal and any of the theories was legally insufficient, then the verdict must be reversed. [See also *United States v Tomblin*, 46 F3d 1369, 1385-1386 (CA 5, 1995), and *United States v Self*, 2 F3d 1071, 1092-1093 (CA 10, 1993).]

The reason for treating an evidentiary deficiency claim different than a legal deficiency claim "is that jurors can, from their own experience, weed out evidentiary deficiencies, but not legal insufficiencies." *Tomblin*, 46 F3d at 1385; see also *Self*, 2 F3d at 1093 ("factual insufficiency . . . does not require reversal as we will presume that the jury rejected the factually inadequate theory and convicted on an alternative ground for which the evidence was sufficient").[3]

Here, we conclude that, assuming any factual deficiency with respect to the UBAL theory of OWI, there was adequate evidence to support the OUIL theory. Defendant's deficiency arguments concerning UBAL are "evidentiary" in character, where he asserts that there was insufficient evidence relative to the measurement of alcohol in his breath and the units of measurement of alcohol used by the DataMaster. Defendant argues that this evidence was necessary to support a UBAL-based conviction of OWI, as MCL 257.625(1)(b) requires proof that a person have "an alcohol content of 0.08 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine." We now proceed to provide our reasoning for concluding that there was sufficient evidence to support the OUIL theory of OWI.

We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise

---

[3] Defendant cites *People v Vandenberg*, 307 Mich App 57; 859 NW2d 229 (2014), in arguing that reversal is necessary when a defendant stands convicted on one of two theories, one of which is permissible and one of which is not, where it cannot be ascertained which theory the conviction rested upon. Defendant's reliance on *Vandenberg* is misplaced, given that the theory found to be improper in that case concerned statutory language that was constitutionally overbroad. *Id.* at 67. This would constitute a "legal" deficiency or insufficiency, and jurors would not be expected to weed out that the problematic theory should not be contemplated because it was unconstitutional.

from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). We review de novo the proper interpretation of a statute. *People v Martin*, 271 Mich App 280, 286-287; 721 NW2d 815 (2006).

MCL 257.625(1)(a) prohibits a person from operating a motor vehicle upon a highway or other place open to the general public when "[t]he person is under the influence of alcoholic liquor . . . ." A person is driving under the influence of alcohol when his or her "ability to drive [is] substantially and materially affected by consumption of intoxicating liquor." *People v Lambert*, 395 Mich 296, 305; 235 NW2d 338 (1975) (quotation marks omitted). A driver is under the influence of alcohol when the driver's "ability to operate a motor vehicle in a normal manner [is] substantially lessened" or the driver's "mental or physical condition [is] significantly affected" and the driver is "no longer able to operate a vehicle in a normal manner." M Crim JI 15.3(2); see also *People v Walters*, 160 Mich App 396, 402; 407 NW2d 662 (1987); *People v Raisanen*, 114 Mich App 840, 844; 319 NW2d 693 (1982).

Defendant argues that the evidentiary burden was not shown because the arresting officer did not observe defendant driving erratically on the road and no one from the supermarket saw defendant parking his vehicle in an unusual manner. In both *People v Solmonson*, 261 Mich App 657; 683 NW2d 761 (2004), and *People v Stephen*, 262 Mich App 213; 685 NW2d 309 (2004), this Court found that there was adequate evidence supporting OUIL-based charges, even though the defendants were first seen and discovered by police merely parked in their vehicles, given that there was circumstantial evidence, along with reasonable inferences, that the defendants had driven under the influence of alcohol to the locations where they parked. And in both cases, the defendants made incriminating statements indicative of having committed OUIL. *Stephen*, 262 Mich App at 215, 219-220; *Solmonson*, 261 Mich App at 660-663.

In the instant case, the prosecutor presented sufficient evidence showing that defendant drove his SUV, while under the influence of alcohol, to the supermarket where the police later found him. Defendant indicated that he had driven the vehicle from a friend's apartment to the parking lot of the market a few minutes away, where he eventually passed out with the engine running and his foot on the brake. He admitted to drinking three shots of vodka and three beers during the evening and prior to driving. Defendant testified that he had his third shot of liquor five to ten minutes before leaving the apartment in his SUV. The arresting officer testified that when he arrived at the market, there was vomit right next to the driver's side door of defendant's vehicle. The officer described defendant as smelling of intoxicants, having bloodshot eyes, and looking confused and a bit dazed. The officer further testified, "Driver stated that, as he was driving from [the apartment] to home, he realized that he had consumed too much alcohol and pulled off to the side to sleep it off." On cross-examination, the officer similarly testified to the following regarding a statement made by defendant at the scene, "He said he was driving, realized he drank too much, and pulled to the side to sleep it off." The officer acknowledged that he previously testified at the preliminary examination that defendant indicated that he had "started off fine" when leaving the apartment. Defendant testified that he felt fine when he left

-5-

his friend's apartment, but then he pulled over, "knowing that [he] had started to feel like [he] had too much to drink."

Viewing this evidence in a light most favorable to the prosecution, deferring to the jury's assessments of witness credibility and evidentiary weight, resolving all conflicts in the evidence in favor of the prosecution, and understanding that circumstantial evidence and the reasonable inferences arising from the evidence can establish the elements of the crime, there was more than sufficient evidence supporting defendant's conviction of OWI under an OUIL theory of criminal liability. Even if, due to the lapse of time between the driving and defendant being discovered in the parking lot, we eliminate consideration of the testimony about defendant's appearance and behavior when the officer found defendant in his SUV, there was still evidence that defendant had consumed alcohol before driving and that he told the officer that he had consumed too much alcohol, which is why he parked his SUV in the market's lot. And even if we accept defendant's testimony that he was or felt fine when he first left the apartment, he also testified that he pulled over when he started to feel like he had too much to drink, which, even if it was a short period of time between coming to this realization and actually parking the vehicle, showed the operation of his SUV when he felt intoxicated. Reversal is unwarranted.

Defendant next argues that his trial counsel rendered ineffective assistance because he (1) failed to object to the admissibility of the DataMaster test results, where the prosecution did not lay a proper foundation for their admissibility, (2) failed to object to the arresting officer's improper testimony regarding the reliability of the DataMaster, the maintenance logs, and the calibration of the machine, (3) failed to challenge the admissibility of an improperly administered field sobriety test (HGN), and (4) failed to discover that the DataMaster ticket lacked the necessary measurement of alcohol in the breath as expressed in grams per 210 liters of breath.

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, observed:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant

-6-

bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). Decisions to introduce or challenge evidence are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy. *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002). And we will not "assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). We cannot insulate, however, the review of counsel's performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015).

Defendant testified that he was intoxicated and under the influence of alcohol when the arresting officer discovered him in the market's parking lot, and the officer's testimony also evidenced that defendant was intoxicated at that time. Accordingly, the defense strategy in the case was to present a rising-alcohol-content defense, which would have been premised on defendant being under the influence by the time he was subjected to the sobriety and DataMaster tests. The defense fit neatly with the inescapable facts, and defendant presented an expert witness in support of the rising-alcohol-content defense. Under the circumstances, therefore, it would have made little sense, nor would there have been a need, to challenge the tests that established defendant's intoxication. Although defendant frames this issue in terms of counsel's failure to object to evidence and make evidentiary challenges, he is effectively suggesting that counsel was ineffective for presenting a rising-alcohol-content defense, yet there is no specific argument to that effect. And we have no basis to conclude that defense counsel was ineffective for presenting a rising-alcohol-content defense, especially given the overwhelming evidence of defendant's intoxication when he was found by police at the market a couple of hours after driving his SUV. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Assuming that all of the evidentiary issues raised by defendant in the context of this ineffective assistance claim are valid, e.g., the HGN sobriety test would have been excluded if objected to by counsel, we simply cannot conclude that defense counsel's performance was deficient or that the requisite prejudice was established in light of the nature of the defense that was presented in this case. Moreover, given defendant's concession that he had consumed alcohol that evening, along with the evidence of his inebriated and intoxicated state as described by the arresting officer and defendant himself, we cannot conclude that prejudice could be established *as to OUIL*, even if the HGN sobriety test and the DataMaster results were excluded.

Finally, we reject defendant's argument that the trial court erred in refusing to conduct a *Ginther*[4] hearing. In light of our reasoning set forth above in rejecting the contention that defense counsel was ineffective, we fail to see how a *Ginther* hearing would have been of any benefit or result in a different outcome. Accordingly, the trial court did not abuse its discretion in denying the motion for a *Ginther* hearing. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008).

Affirmed.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Brock A. Swartzle

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).