*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRIANNA BERNIECIA DAVIS,

Defendant-Appellant.

UNPUBLISHED
June 25, 2025
3:13 PM

No. 369057
Macomb Circuit Court
LC No. 2022-002215-FH

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of intentional discharge of a firearm from a motor vehicle, MCL 750.234a(1); assault with a dangerous weapon (felonious assault), MCL 750.82(1); carrying a weapon (CCW), MCL 750.227(2); and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant to terms of 119 days in jail and three years' probation with 119 days of jail credit for the intentional discharge of a firearm from a motor vehicle conviction, three years' probation for the felonious assault conviction, and 119 days in jail and three years' probation with 119 days of jail credit for the CCW conviction, to be served concurrently, and a two-year term of imprisonment for the felony-firearm conviction, to be served consecutively to the probationary sentence for the felonious assault conviction. We affirm defendant's convictions, but remand for the limited purpose of correcting defendant's judgment of sentence.

## I. BACKGROUND

Defendant's convictions arise from the August 27, 2022 assault of Tineshia Cooper in the parking lot of a Taco Bell in Warren. Cooper ordered from a Wendy's restaurant through the DoorDash application (app). Soon after ordering, Cooper realized that she had mistakenly used her business address instead of her home address for the delivery destination. Because the "Dasher" had already picked up the food, Cooper could not change the delivery address. Cooper contacted the Dasher through the app to arrange to meet. The Dasher on the account was defendant's uncle, but defendant was using his account to pick up and deliver several orders. Ultimately, defendant's uncle connected Cooper to defendant.

-1-

Cooper had used the app to track defendant's route, which led Cooper to a nearby Taco Bell. Still on the phone, Cooper confirmed with defendant that defendant was at Taco Bell. Cooper found defendant in the drive-through line, pulled her vehicle parallel to defendant's car, identified herself as the person who called through the Dasher app, and requested her food. Cooper got out of her vehicle and approached defendant's vehicle. Defendant responded that Cooper could not take the food, because Door Dash "doesn't work like that." Cooper observed a Wendy's bag on the front passenger seat of defendant's vehicle. Cooper asked again if she could have her food. Cooper then reached through the opened window and took the Wendy's bag. Cooper got into her vehicle, placed the bag in her driver's seat, and when she looked back she saw defendant pointing a gun at Cooper's chest. Cooper immediately drove away, and then "heard a loud pop." When Cooper made it to a safe location, she called the police. After the police arrived, Cooper saw a bullet hole at the bottom of her driver's side door. Cooper testified that she was unarmed and did not yell or make any threatening gestures during her interaction with defendant.

Defendant testified in her own defense, asserting that she acted in self-defense when she discharged her firearm. Defendant testified that (1) Cooper was "aggressive" both on the phone and in person when demanding her food; (2) Cooper parked her vehicle directly next to defendant's car, making it impossible for defendant to leave; (3) when Cooper reached into defendant's vehicle, defendant felt "[t]hreatened, scared, [and] fearful"; (4) defendant was anxious because she was seven months pregnant, and because she was shot in her chest during an attempted robbery while sitting in her car in 2021; and (5) defendant's intent was to fire a "warning shot . . . to stop a threat." Defendant admitted that Cooper did not have a gun, and that Cooper did not attempt to make any physical contact with defendant. The defense urged the jury to "think about how [defendant] felt . . . she felt like she needed to defend herself and her unborn child[.]"

Defendant was convicted and sentenced as indicated. Defendant now appeals.

## II. ADJOURNMENT

Defendant first argues that the trial court abused its discretion by denying defendant's request to adjourn trial to allow defendant the opportunity to obtain her mental health evaluation, which was required to engage in plea negotiations for the felony-firearm charge. We disagree.

We review a trial court's ruling on a motion for an adjournment for an abuse of discretion. *People v Coy (After Remand)*, 258 Mich App 1, 17; 669 NW2d 831 (2003). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). A defendant must show good cause to warrant an adjournment. *Coy*, 258 Mich App at 18; MCR 2.503(B)(1). "Good cause factors include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Coy*, 258 Mich App at 18 (cleaned up). Even if good cause is shown, "the trial court's denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion." *Id*. at 18-19.

Defendant failed to demonstrate good cause to warrant an adjournment. Defendant's motion to adjourn trial was not based on the assertion of a constitutional right. Defendant argued that she had the right "to negotiate plea offers with the government," and "a right to have this

[case] pre-tried." Criminal "defendants have no right to be offered a plea" bargain. *Lafler v Cooper*, 566 US 156, 168; 132 S Ct 1376; 182 L Ed 2d 398 (2012) (cleaned up). On appeal, defendant mentions a "violation of her right to present a defense" and argued she was forced "to proceed to trial on a case [defendant] desperately sought to resolve." Indeed, criminal defendants have a constitutional right to present a defense. US Const, Am VI; Const 1963, art 1, § 20. But a defendant's right to present a defense does not encompass a right to submit a deviation request and seek a plea offer. Moreover, when the court inquired regarding the possibility of a plea offer, the prosecutor advised the court that no plea offer had been made to defendant.

Defendant also failed to establish that she was not negligent in waiting nearly 10 months to obtain the necessary mental health evaluation and submit a deviation request. Defendant's request for an "emergency" adjournment to engage in plea negotiations was made on the first day of trial after the first group of prospective jurors were instructed and sworn in. At that time, defendant was well aware that she did not have the mental health evaluation needed to make a deviation request. As the trial court recognized, the case had been in pretrial status for nearly one year and there had been numerous pretrial conferences. At the November 10, 2022 pretrial conference, the trial court granted defendant's request for a 30-day adjournment to afford defendant an opportunity to submit a deviation request and engage in plea negotiations. Thereafter, the trial court granted five additional adjournments. The record reflects that at least four of those five adjournments were at defendant's request in order to obtain a mental health evaluation, submit a deviation request, and engage in plea negotiations. Defendant cannot show that the trial court abused its discretion by denying yet another request for adjournment.

## III. JURY COMPOSITION

Defendant, who is a Black woman, argues that she was denied her Sixth Amendment right to an impartial jury drawn from a fair cross section of the community, emphasizing that there were only two Black people in the venire from which her jury was selected. We disagree.

We review de novo issues "concerning the systemic exclusion of minorities in jury venires . . . ." *People v McKinney*, 258 Mich App 157, 161; 670 NW2d 254 (2003). We review the factual findings of the trial court for clear error, which exists "if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012).

"A defendant has the right to be tried by an impartial jury drawn from a fair cross section of the community." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 428; 884 NW2d 297 (2015). In *Bryant*, 491 Mich at 596-597, our Supreme Court reiterated the framework for considering alleged violations of that right as stated in *Duren v Missouri*, 439 US 357; 99 S Ct 664; 58 L Ed 2d 579 (1979). To establish a prima facie violation of the fair-cross-section requirement, a defendant has the burden of proving the following:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in

the jury-selection process.  [*Bryant*, 491 Mich at 597, quoting *Duren*, 439 US at 364.]

Regarding the first prong, it is undisputed that defendant, as a Black person, is a member of a distinct group in the community for purposes of the fair-cross-section requirement.  See *Bryant*, 491 Mich at 598.  But defendant has not established the second and third prongs.

"[T]he second prong is satisfied where it has been shown that a distinctive group is substantially underrepresented in the jury pool." *People v Williams*, 241 Mich App 519, 526; 616 NW2d 710 (2000) (cleaned up).  To analyze this prong, "a court must examine the composition of jury pools and venires *over time* using the most reliable data available to determine whether representation is fair and reasonable." *Bryant*, 491 Mich at 599-600.  This examination requires "a court to evaluate the composition of *venires* over a significant time period rather than just the defendant's individual venire." *Id*. at 600.  To meet this burden, the defendant must submit evidence regarding the distinctive group's representation in the composition of jury venires over a significant time, as well as the proportion of the community made up of members of the distinctive group.  See *id*. at 597-615 (discussing the statistical evidence necessary for a defendant to establish the second prong of the *Duren* test).  Defendant relied on the fact that, although Black individuals made up 13.7% of the population in Macomb County, there were only two Black people in the venire from which her jury was selected.  Defendant failed to present any evidence showing the racial composition of jury pools and venires in Macomb County *over time*.  "Merely showing one case of alleged underrepresentation does not rise to a general underrepresentation that is required for establishing a prima facie case." *Williams*, 241 Mich App at 526 (cleaned up).

Defendant has also failed to satisfy the third prong, which requires her to show that any underrepresentation is because of systematic exclusion.  "A systematic exclusion is one that is 'inherent in the particular jury-selection process utilized.' " *Bryant*, 491 Mich at 615-616 (cleaned up).  As the trial court observed, defendant acknowledged that the data presented at the evidentiary hearing did not show that any underrepresentation was because of a systematic exclusion of Black people.  Defendant simply relied on the fact that the juror selection process only draws from information derived from the Secretary of State.  Defendant offered no evidence that this jury-selection process results in a *systematic exclusion* of Black people from Macomb County jury pools.  Accordingly, defendant is not entitled to relief.

## IV.  SUFFICIENCY OF THE EVIDENCE–SELF-DEFENSE

Defendant next argues that the prosecution failed to disprove beyond a reasonable doubt that she did not act in self-defense and thus there was insufficient evidence to support her convictions of intentional discharge of a firearm from a motor vehicle, felonious assault, and felony-firearm.  We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020).  "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020).  "[A] reviewing court is *required* to draw all reasonable inferences and

make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (cleaned up). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

Defendant challenges her convictions of intentional discharge of a firearm from a motor vehicle, felonious assault, and felony-firearm. Intentional discharge of a firearm from a motor vehicle requires that the prosecutor prove that the defendant (1) "intentionally discharge[d] a firearm from a motor vehicle," and (2) the "violation endanger[ed] the safety of another individual." See MCL 750.234a(1)(a). The elements of felonious assault are "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013) (quotation marks and citation omitted). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Bass*, 317 Mich App 241, 268-269; 893 NW2d 140 (2016) (cleaned up).

Defendant does not dispute the above elements were proven beyond a reasonable doubt. Instead, defendant contends the prosecution failed to disprove beyond a reasonable doubt that defendant acted in lawful self-defense. Self-defense is an affirmative defense that, if established, will justify otherwise punishable criminal conduct. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). The Self-Defense Act (SDA), MCL 780.971 *et seq.*, codified the circumstances in which a person may use self-defense. By its express terms, the SDA did "not diminish an individual's right to use deadly force or force other than deadly force in self-defense or defense of another individual as provided by the common law of this state in existence on October 1, 2006." MCL 780.974. Relevantly, MCL 780.972(1) states:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . . the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

"[O]nce a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *Dupree*, 486 Mich at 712. "In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013).

Defendant testified that she had an honest and reasonable belief that Cooper presented an immediate threat of death or great bodily harm because (1) Cooper was "aggressive" both on the phone and in person when demanding her food; (2) Cooper parked her vehicle directly next to

defendant's car, making it impossible for defendant to leave; (3) when Cooper reached into defendant's vehicle, defendant felt "[t]hreatened, scared, [and] fearful"; and (4) defendant was anxious because she was seven months pregnant at the time. Defendant further explained that she had an honest and reasonable belief that she was in imminent danger on the basis of her past experience of being shot during an attempted robbery while she was sitting in her car.

The jury also heard defendant's acknowledgement that she had "some idea" that the person who approached her vehicle was Cooper. Cooper testified that, although she reached into defendant's car and took the bag, she did not yell or make any threatening gestures. While defendant claimed that Cooper was aggressive, defendant admitted that Cooper did not have a gun, and that Cooper did not attempt to make any physical contact with defendant. Cooper testified that, when she saw defendant pointing a gun, she immediately drove away, and "heard a loud pop." Defendant claimed that she intended only to fire a "warning shot," but acknowledged that she did not shoot straight up. Although defendant testified that she did not intend to shoot in Cooper's direction, the bullet struck the driver's side door of Cooper's vehicle. A jury could have rationally inferred that defendant did not act in justifiable self-defense.

Defendant's challenges, including what inferences could be drawn from the evidence, are related to the weight and credibility of the evidence, which were issues for the jury to resolve. *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). The jury was free to accept or reject the theory of either party in light of the evidence presented at trial, and we will not interfere with the jury's role of determining issues of weight and credibility. *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020). Further, we are required to resolve all conflicts in the evidence—whether direct or circumstantial—in favor of the prosecution, *Kenny*, 332 Mich App 402-403. Applying these standards, there was sufficient evidence to enable the jury to find beyond a reasonable doubt that defendant was guilty of the crimes charged. We will not disturb that determination.

## V. THE JUDGMENT OF SENTENCE

In her last claim, defendant argues that the trial court incorrectly ordered that the two-year term of imprisonment for the felony-firearm conviction is to be served consecutively to the three-year term of probation for the underlying felonious assault conviction. Plaintiff concedes this issue, and we agree.

"To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) (cleaned up). It is undisputed defendant did not perform any of those actions and thus this issue is unpreserved. Accordingly, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763; 597 NW2d 130 (1999).

Whether a consecutive sentence may be imposed is a question of statutory interpretation that we review de novo. *People v Gonzalez*, 256 Mich App 212, 229; 663 NW2d 499 (2003). "In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (cleaned up). The statute governing felony-firearm, MCL 750.227b, states:

(1) A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, . . .is guilty of a felony and shall be punished by imprisonment for 2 years.

* * *

(3) A term of imprisonment prescribed by this section is in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony.

In *People v Brown*, 220 Mich App 680; 560 NW2d 80 (1996), which is directly analogous to this case, the defendant was sentenced to two years' imprisonment for his felony-firearm conviction, and five years' probation for the underlying felony, felonious assault, to be served consecutively. *Id*. at 681. We held that the plain language of the felony-firearm statute, MCL 750.227b,[1] "provides that the term of imprisonment imposed for defendant's felony-firearm conviction shall only be served consecutively with and before a sentence *of imprisonment* for the underlying felony," and does not provide statutory authority for the imposition of a consecutive sentence of probation." *Id*. at 683. Because the trial "court sentenced [the] defendant under a mistaken belief in the law, we remand[ed] for the ministerial task of correcting the judgment of sentence to reflect that [the] defendant's sentences of two years' imprisonment for the felony-firearm conviction and five years' probation for the felonious assault are to run concurrently." *Id.* at 685.

Likewise, in this case, because defendant was sentenced to probation, instead of imprisonment, for the underlying felonious assault conviction, that sentence must run concurrently to the two-year term of imprisonment imposed for the felony-firearm conviction. Consequently, as plaintiff concedes, defendant is entitled to remand for the limited purpose of correcting the judgment of sentence to reflect that defendant's two-year term of imprisonment for the felony-firearm conviction and the three-year term of probation for the felonious assault conviction are to run concurrently. *Id*.

We affirm defendant's convictions, but remand for the limited purpose of correcting the judgment of sentence. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

---

[1] MCL 750.227b has been amended since *Brown* was decided in 1996. The language in the subsection of the felony-firearm statute relied on in *Brown* was not altered. Therefore, the *Brown* analysis remains applicable in this case.